## Margolin, Appellant, *v.* Pennsylvania Railroad Company.

196

Argued November 18, 1960. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

*Sigmund H. Steinberg,* with him *Samuel P. Lavine,* and *Blank, Steinberg, Balder & Steinbrook,* for appellants.

*Philip Price,* with him *William H. Lowery,* and *Barnes, Dechert, Price, Myers & Rhoads,* for appellee.

OPINION BY MR. JUSTICE EAGEN, March 13, 1961:

This appeal is from the judgment entered below following the dismissal of plaintiffs' motion for a new trial in an action of trespass wherein relief was sought for an allegedly improper termination of an implied irrevocable license. The case was submitted to a jury solely on the issue of damages, the question of liability having been by agreement reserved to the court. The jury returned a verdict of "no damage." The court thereafter, and following argument on the matter of liability, determined that "there is no valid basis upon which to impose liability upon defendant." Appellants, of course, disagree and further contend that the jury's verdict was capricious. Appellants also as-

sign as error a series of allegedly improper rulings by the trial court on their objections to the admission into evidence of certain testimony and exhibits, all of appellants' exceptions to which rulings were discussed at length in the lower court's opinion.

Pursuant to authority conferred by ordinance of the City of Philadelphia, dated June 9, 1900, appellee entered into an agreement with the Commercial Trust Company on February 14, 1901, the sum and substance of which agreement called for the erection and maintenance by appellee of an elevated footbridge from the train floor of appellee's Broad Street Station to the second-story level of the proposed, but as yet unconstructed, Commercial Trust Building. When completed, the footbridge crossed Market Street on the easterly side of 15th Street. It was used for fifty years by patrons of appellee's railroad, by tenants of the Trust Company and its successors in title, and by the general public. Appellee's trains entered its Broad Street Station after passing over the widely familiar "Chinese Wall." As the years and times progressed, during which period appellee had constructed its downtown Suburban Station and its West Philadelphia 30th Street Station, the number of arrivals and departures from the Broad Street terminus lessened and lessened. Finally, and following approval of the Pennsylvania Public Utility Commission on March 10, 1952, appellee's last scheduled arrival entered Broad Street Station on April 27, 1952. Shortly thereafter the station was closed, a partition between its building and the footway was erected and later both the station and the footbridge were razed. The old "Chinese Wall," as well, succumbed to the modern drug of urban redevelopment.

So as to allow for the abutment of the footbridge at its northerly side, the Commercial Trust Building had to be specially constructed and was, accordingly,

so designed that stairways and doorways not ordinarily in such areas were provided for and installed. Because of this special conformance, which was necessitated to comply with the contractual provisions of the agreement of 1901, appellants, as successors in title to the Commercial Trust Company, claim that a license, impliedly arising from the agreement, became irrevocable. They assert as damages the special costs incident to the erection of the building in so special a way; the expense incurred in closing up the wall following the removal of the footbridge, in tearing down the stairways inside the building, and in converting this space into offices; the rental losses allegedly suffered as a result of the disappearance of the footbridge which had been a "talking point" instrumental in the leasing of various offices; the depreciation in the market value of the building.

We have studied in detail appellants' well argued positions and have found them not to be sustained by the record. It seems to us that there is an unsurmountable barrier to appellants' case. They are confronted with a contract that does not say what they would like it to have said. And, while they argue for a fair and reasonable judicial discernment of the intent of the parties to the 1901 agreement, citing among other authorities *Wood v. Lucy, Lady Duff-Gordon,* 222 N. Y. 88, 118 N.E. 214 (1917), we find as inescapable the conclusion that to sustain their position is to fly in the very face of the well-settled law to which they refer us. The agreement does not bind appellee to the perpetual maintenance of a terminal and footbridge at Broad Street nor can it reasonably be construed as impliedly providing for the payment of damages upon appellee's cessation of activity at that location and its concurrent demolition of its station and footbridge. We find the agreement to be barren of any such inferences or implications.

Of this fifty year old footbridge appellants would make an unbreakable iron chain, one end of which they would attach to their building, the other to the long and distant past. We feel, as did the lower court, that an absurd, rather than a reasonable, construction must be given the contract in question so as to hold that the parties intended that, come what may—no matter when, this public utility could not remove its terminal without subjecting itself to legitimate claims for damages. We can only conclude that such a provision was omitted from the agreement because the parties thereto, in their best judgment, saw fit not to insert it.

Appellants also contend that irrespective of the written agreement of 1901, they acquired the asserted right of an irrevocable or executed license by prescription. This is equally without merit. The undisputed facts belie the existence of such a right. In addition, these parties, or their predecessors in title, stipulated and defined their rights and obligations in a writing of their own making. The rights acquired are defined in the contract: *Witman v. Stichter*, 299 Pa. 484, 149 Atl. 725 (1930). It just cannot be ignored and treated as nonexistent. By its terms the parties involved are bound. The contract itself is completely inconsistent with the existence of an irrevocable license by prescription and no matter how you evaluate this situation, any existing rights must basically and fundamentally be derived therefrom. Further, to establish a property right by prescription, the use upon which it is based *must be adverse* to the rights of the owner of the land. If the use is the result of some lease, license, indulgence, or special contract given by the owner, it is not adverse: *Shinn v. Rosenberger*, 347 Pa. 504, 32 A. 2d 747 (1943); *Farmers' N. Market Co. v. Gallagher*, 392 Pa. 221, 139 A. 2d 908 (1958).

The lower court was clearly correct in concluding no liability existed.

Judgment affirmed.