713 A.2d 61

**Jay H. MYERS and Helen L. Myers, His Wife, Appellants**

v.

**Melvin S. BEAM and Anna M. Beam, His Wife, Appellees.**

Supreme Court of Pennsylvania.

Argued Feb. 2, 1998.

Decided May 20, 1998.

Reargument Denied July 8, 1998.

Michael D. Reed, Harrisburg, for Jay H. Myers, et ux.

Dale F. Shughart, Jr., Carlisle, for Melvin S. Beam, et ux.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION OF THE COURT

FLAHERTY, Chief Justice.

■ Appellants Jay and Helen Myers sought to acquire title by adverse possession to a strip of land adjoining their property, and the court of common pleas granted their petition. The court found that all elements necessary to establish title by adverse possession were present.* The Superior Court, however, reversed due to appellants' attempt to acquire title by seeking a quitclaim deed from appellees' predecessors in title before the expiration of the statute of limitations for adverse possession. The Superior Court held that the request for a quitclaim deed was an acknowledgement of the superiority of the record owners' title inconsistent with the requirement that adverse possession must be hostile. Thus the element of hostility is the only element of adverse possession at issue.

Appellant argues that we should follow the reasoning of Judge Tamalia, who dissented from the conclusion of the majority of the Superior Court panel. He cited *Burns v. Mitchell*, 252 Pa.Super. 257, 381 A.2d 487 (1977), to the effect that even if a trespasser seeks a quitclaim deed from the

---

* "[O]ne who claims title by adverse possession must prove actual, continuous, exclusive, visible, notorious, distinct and hostile possession of the land for twenty-one years." *Baylor v. Soska*, 540 Pa. 435, 438, 658 A.2d 743, 744 (1995).

record owner, such a trespasser is not acknowledging superior title in the record owner, but is merely seeking to improve the marketability of his own title.

*Burns,* however, is factually distinguishable. The disputed land in *Burns* adjoined the lots of the two parties, neither of whom held record title. Burns obtained title by adverse possession. She later acquired a quitclaim deed to the disputed land. *Burns* held that the quitclaim deed only gave Burns record title to property she had already acquired by adverse possession. Under these circumstances, Burns merely improved the marketability of her title after establishing ownership by adverse possession.

In this case, by contrast, appellants sought a quitclaim deed from the record owner; moreover, they did so approximately eight years prior to the running of the statute of limitations for adverse possession. It is therefore apparent that the *Burns* precept—namely, that it is perfectly consistent to claim title by adverse possession and also seek a quitclaim deed—is inapplicable under the facts of this case.

It is also argued that it is not essential to establish hostility in a claim of adverse possession if all other elements of adverse possession are present. This argument is based on *Tioga Coal Co. v. Supermarkets General Corp.,* 519 Pa. 66, 75, 546 A.2d 1, 5 (1988). *Tioga* stated that "if the true owner has not ejected the interloper within the time allotted for an action in ejectment, and all other elements of adverse possession have been established, hostility will be implied, regardless of the subjective state of mind of the trespasser." *Id.* Appellants argue that if the *Tioga* rule is applied to this case, where every element of adverse possession, with the sole exception of hostility, is undisputedly present, then title by adverse possession has been properly proved, as hostility is implied when the other elements are present.

This is a misinterpretation of the holding and rationale of *Tioga.* The opinion stated that the above holding "is consistent with a requirement that adverse possession be characterized by hostility as well as the other elements of the cause of

action. . . ." *Id.,* 519 Pa. at 75, 546 A.2d at 5. *Tioga* manifestly cannot be interpreted as disposing of the requirement of hostility. The record in *Tioga* was silent as to evidence of hostility.

To interpret and apply the holding of *Tioga* in this case, it is essential to recognize that the facts of the cases differ materially. The record of *Tioga* was silent as to hostility; there was no evidence tending to prove or disprove hostility. In those circumstances, the court inferred the existence of hostility. In this case, however, there is evidence tending to disprove the existence of hostility. To rely on *Tioga* to establish the existence of hostility in this case would not only be an extreme extension of *Tioga,* but would essentially eliminate hostility as one of the required elements of adverse possession. Such an interpretation is impermissible given the above-quoted statement in *Tioga* that its holding "is consistent with a requirement that adverse possession be characterized by hostility as well as the other elements of the cause of action. . . ." *Id.,* 519 Pa. at 75, 546 A.2d at 5. Here, seeking a quitclaim deed destroyed the element of continuous hostility in the adverse possession of appellants, and *Tioga* is not capable of being interpreted as supplying that element by implication.

■ We therefore hold that the Superior Court was correct in reversing the court of common pleas, thereby denying title by adverse possession on account of appellants' attempt to acquire a quitclaim deed from appellees.

Order of the Superior Court affirmed.

SAYLOR, J., files a dissenting opinion in which CASTILLE and NIGRO, JJ., join.

SAYLOR, Justice, dissenting.

There is ample evidence of record to establish the element of hostility required to support a claim of adverse possession. The trial court found that Appellants "intentionally possessed the property as against the record owners." *See Vlachos v. Witherow,* 383 Pa. 174, 176, 118 A.2d 174, 177 (1955) (finding that hostility does not denote ill will, but rather the intent to

hold title to property against the record title holder). This explicit finding of hostile possession is supported by evidence that Appellants: believed, upon purchase of their farm, that the disputed property was part of their lands; asserted continuous and exclusive dominion over the property; visibly excavated and cleared the property; constructed and removed fencing; and continuously mowed and maintained the property in a manner appropriate to its character.

I differ, most respectfully, with the majority's holding that Appellants' request for a quitclaim deed served to destroy the requisite hostility. This is so, the majority reasons, because such action constituted an acknowledgment of the superiority of the record owners' title. While an offer to acquire legal title may constitute recognition of superior right in another and support the inference that use of the property is by permission, *see Pistner Bros. v. Agheli,* 359 Pa.Super. 177, 518 A.2d 838 (1986), an attempt to secure a quitclaim deed does not, in my view, support a similar inference.

By statute, a quitclaim deed does not convey or warrant record title but, rather, constitutes only a release by the grantor of his or her interest, if any, in the property in question. 21 P.S. § 7; *see generally Greek Catholic Congregation v. Plummer,* 338 Pa. 373, 12 A.2d 435 (1940); LADNER ON CONVEYANCING IN PENNSYLVANIA 9.02 (rev. 4th ed.1979). Indeed, the device is most useful for the very reason that it permits parties to settle a property dispute without the necessity of an acknowledgment by either as to the merit of the other's claim.

Thus, Appellants' request for a quitclaim deed did not constitute an acknowledgment that Appellees' predecessor in title possessed superior title, or any title at all, to the property in question.

CASTILLE and NIGRO, JJ., join this dissenting opinion.