John FLANNERY, Appellant

v.

John H. STUMP, Appellee.

Superior Court of Pennsylvania.

Submitted July 23, 2001.

Filed Nov. 2, 2001.

Edward Collins, Reading, for appellant.

John T. Wertz, Robesonia, for appellee.

Before: CAVANAUGH, JOHNSON, and HESTER, JJ.

CAVANAUGH, J.

¶ 1 John Flannery appeals from the trial court's order granting John Stump's motion for summary judgment and barring Flannery from asserting any rights to a disputed parcel of land. Flannery argues that the trial court erred in concluding that Stump has superior title to the disputed parcel by adverse possession. After review, we conclude that the trial court erred as a matter of law. Accordingly, we reverse the trial court's order.

¶ 2 This case arises from a dispute between adjacent landowners over a parcel of land situated in Penn Township, Berks County. Sometime in 1963, Stump leased and farmed land then owned by Kathryn Kline. In addition to the land leased to him, Stump made use of a rectangular piece of property adjacent to Kline's. In December 1979, Stump purchased Kline's property. In addition to the land that he purchased from Kline, Stump continued to farm a portion of the adjacent land. Sometime in 1986, Flannery purchased property adjoining Stump's. Included within Flannery's property is the rectangular parcel of land then being farmed by Stump. In August 1996, Flannery filed an action in declaratory judgment seeking a court order declaring him the legal owner of the disputed parcel and ejecting Stump from the same. Stump filed an answer and counterclaim asserting his right to the property under the doctrine of adverse possession. After pursuing discovery, which included the taking of the depositions of both parties, Flannery filed a motion for summary judgment, which the trial court denied. The parties entered into a stipulation of facts and, thereafter, Flannery filed a motion for reconsideration of summary judgment. Stump filed a responsive brief and a cross-motion seeking summary judgment on the basis that he had legal title to the land by adverse possession. The trial court dismissed Flannery's motion and entered an order granting summary judgment in Stump's favor. Flannery then filed this appeal.

¶ 3 Our scope of review of a trial court's grant of summary judgment is plenary. *Pappas v. Asbel,* 564 Pa. 407, 768 A.2d 1089, 1095 (2001); *Davis v. Resources for Human Development, Inc.,* 770 A.2d 353, 356 (Pa.Super.2001). Summary judgment is proper where the pleadings, depositions, answers to interrogatories, admissions and affidavits and other materials demonstrate that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See *Davis, supra,* at 356–357 (quoting *Hoffman v. Pellak,* 764 A.2d 64, 65–66 (Pa.Super.2000)); see Pa.R.C.P. 1035.1–1035.5. We apply the same standard of review as the trial court in that we view the record in the light most favorable to the party opposing the motion and resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. See *Wendler v. Design Decorators, Inc.,* 768 A.2d 1172 (Pa.Super.2001). However, we are mindful that in this case both parties have moved for summary judgment. We will reverse the trial court's grant of summary judgment only upon an abuse of discretion or error of law. See *Pappas, supra,* at 1095.

¶ 4 Adverse possession is an extraordinary doctrine which permits one to achieve ownership of another's property by operation of law. Accordingly, the grant of this extraordinary privilege should be based upon clear evidence. *Edmondson v. Dolinich,* 307 Pa.Super. 335, 453 A.2d 611, 614 (1982) ("It is a serious matter indeed to take away another's property. That is why the law imposes such strict requirements of proof on one who claims title by adverse possession."); *Stevenson v. Stein,* 412 Pa. 478, 195 A.2d 268, 270 (1963) (citing cases; "Of course, the burden of proving adverse possession was upon plaintiff by credible, clear and definitive proof.")

¶ 5 One who claims title by adverse possession must prove actual, continuous, exclusive, visible, notorious, distinct and hostile possession of the land for twenty-one years. *See Baylor v. Soska,* 540 Pa. 435, 658 A.2d 743, 744 (1995); *Beck v. Beck,* 436 Pa.Super. 516, 648 A.2d 341, 343 (1994). Each of these elements must exist; otherwise, the possession will not confer title.

¶ 6 The Pennsylvania Supreme Court observed in 1855:

In order to give title under the statute of limitations, the possession of the disseisor must not only be actual, but it must be visible, notorious, distinct, hostile, and continued for the period of twenty-one years: Hawk v. Senseman, 6 Ser. & R. 21; Adams v. Robinson, [6 Pa. 271] 6 Barr 271. This doctrine has been so constantly repeated by our Courts, and so generally acted upon by the people, that it has become a rule of property which cannot be changed without a manifest disregard of the principle of *stare decisis,* producing in its result an alarming violation of the right of proper-

ty, and a disastrous disturbance of the quiet of the community. *Hole v. Rittenhouse,* 25 Pa. 491 (1855).

¶ 7 More recently, our supreme court has stated that hostility may be implied where all of the remaining elements of adverse possession have been established and where there is no evidence tending to prove or disprove hostility. *Myers v. Beam,* 551 Pa. 670, 713 A.2d 61, 62 (1998); *Tioga Coal Co. v. Supermarkets General Corp.,* 519 Pa. 66, 546 A.2d 1, 5 (1988). As stated by the court:

*Tioga* manifestly cannot by interpreted as disposing of the requirement of hostility. The record in *Tioga* was silent as to evidence of hostility.

To interpret and apply the holding of *Tioga* in this case, it is essential to recognize that the facts of the cases differ materially. The record of *Tioga* was silent as to hostility; there was no evidence tending to prove or disprove hostility. In those circumstances, the court inferred the existence of hostility. In this case, however, there is evidence tending to disprove the existence of hostility. To rely on *Tioga* to establish the existence of hostility in this case would not only be an extreme extension of *Tioga,* but would essentially eliminate hostility as one of the required elements of adverse possession. Such an interpretation is impermissible given the above-quoted statement in *Tioga* that its holding "is consistent with a requirement that adverse possession be characterized by hostility as well as the other elements of the cause of action...." *Id.,* 519 Pa. at 75, 546 A.2d at 5.

*Myers, supra,* at 62.

¶ 8 "[T]o establish a property right by prescription, the use upon which it is based *must be adverse* to the rights of the owner of the land. If the use is the result of some lease, license, indulgence, or

special contract given by the owner, it is not adverse." *Margolin v. Pa. Railroad Co.*, 403 Pa. 195, 168 A.2d 320, 322 (1961). If an intruder declares or acknowledges that he is taking or holding the possession of the land for the owners thereof, it cannot be deemed adverse. *Fitch v. Mann*, 8 Pa. 503, 507–508 (1848). An alleged adverse possessor "always claims in derogation of the right of the true owner, admitting that the legal title is in another." *Sutton v. Miller*, 405 Pa.Super. 213, 592 A.2d 83, 90 n. 8 (quoting 3 Am.Jur.2d, Adverse Possession § 9 (1986)).

¶ 9 The holding of *Myers* was a reaffirmation of the continued viability of the element of hostility in an adverse possession claim, as articulated in *Tioga*. "While the word 'hostile' has been held not to mean ill will or hostility, it does imply the intent to hold title against the record title holder." *Tioga, supra*, at 3 (quoting *Vlachos v. Witherow*, 383 Pa. 174, 118 A.2d 174, 177 (1955)). The element of hostility requires that the court examine not just the physical facts of possession but also the evidence, if any, probative of the intent with which the land in question was possessed.[1]

¶ 10 Moreover, the adverse claimant must use the land exclusively for himself. We have confirmed that:

> It is well settled that a party claiming title to real property by adverse possession must affirmatively prove that he or she had actual, continuous, distinct, and hostile possession of the land for twenty-one years. Each of these elements must

exist, otherwise the possession will not confer title. *An adverse possessor must intend to hold the land for himself, and that intention must be made manifest by his act* . . . . He must keep his flag flying and present a hostile front to all adverse pretensions. Broadly speaking, actual possession of land is dominion over the land; it is not equivalent to occupancy.

*Fred E. Young, Inc. v. Brush Mountain Sportsmen's Assn.*, 697 A.2d 984, 990 (Pa.Super.1997) (quoting *Glenn v. Shuey*, 407 Pa.Super. 213, 595 A.2d 606, 610–611 (1991)) (emphasis added).

¶ 11 The instant record is not silent as to hostility and exclusivity. It establishes that during each of the periods of time during which Stump farmed the disputed parcel, *i.e.*, first from 1963 through 1979 as a tenant farmer and then from 1979 through 1996 as an adjoining landowner, Stump acted without the requisite hostile intent. In either capacity, Stump's usage of the land of another was neither hostile nor exclusive at any time.

¶ 12 Regarding the period from 1963 through 1979, the evidence of record established that Stump farmed the disputed parcel in his capacity as a tenant farmer of Kline. Under a mistaken belief that the disputed parcel was owned by Kline, Stump farmed the parcel in the capacity of a subservient tenant.

¶ 13 During the course of his deposition, Stump testified as follows:

> Q. When you leased that property, was it your understanding and belief that

---

1. In light of the supreme court's holding in *Myers*, we decline to follow cases decided by this court which have found that a showing of hostility may be implied in all cases in which the other elements of the adverse possession claim have been made out. *See, e.g., Schlagel v. Lombardi*, 337 Pa.Super. 83, 486 A.2d 491 (1984). Rather, we are obliged to follow the

most recent pronouncements of the supreme court in this area of law, as in all other areas. *See Com. v. Randolph*, 553 Pa. 224, 718 A.2d 1242, 1245 (1998) ("It is a fundamental precept of our judicial system that a lower court may not disregard the standards articulated by a higher court.")

you were leasing the property up to the fence row which would include the disputed parcel?

A. That's right.

Oral deposition of John H. Stump, 4/4/97, at 19.

¶ 14 Additionally, the parties agreed in the stipulation of facts that Stump began openly farming the disputed land *as a tenant of Kathryn Kline* in 1963. The evidence clearly disproves hostility during the initial period of Stump's farming of the disputed parcel since it establishes that Stump believed he had a legal right, as a tenant, to farm the entire piece of land, including the disputed parcel. However, Kline had no ownership interest in the disputed parcel, and, therefore, as a subservient tenant of Kline, Stump could not claim a right to adverse possession. *See Jones v. Porter*, 3 P. & W. 132, 134 (Pa. 1831) (One may enter under a contract with the owner and such entry and possession is not adverse until he declares his intention to hold and claim for himself.)

¶ 15 The evidence showed that Stump considered the disputed parcel to be a part of the land that he farmed with permission as a tenant farmer. " 'Where the possession, at its inception, is permissive, . . . [adverse possession] will not begin to run against the real owner *until there has been some subsequent action of disseizin or open disavowal of the true owner's title . . .' Moser v. Granquist*, 362 Pa. 302, 304–305, 66 A.2d 267, 268 (1949). [Emphasis in original]." *Roman v. Roman*, 485 Pa. 196, 401 A.2d 361, 363 (1979).

¶ 16 Regarding the period of time from 1979 through 1996, the evidence showed that Stump believed himself to be the legal owner of the disputed parcel after he made the purchase from Kline in 1979. Stump testified as follows at his deposition:

Q. And when you purchased the property, was it at that time also your belief that the disputed property was part of the property you were purchasing?

A. Yes.

Oral deposition of John H. Stump, 4/4/97, at 19.

¶ 17 However, it is fair and reasonable to assume that one who buys land will be careful to insist that the deed description include all of the land which he believes to be purchasing. When Stump purchased the land from Kline, he was charged with knowledge of the metes and bounds of the land he purchased. When he proceeded, nevertheless, to use the land of another, he cannot be heard to say that he did not know the dimensions of the tract which he purchased.

¶ 18 Even if we were to accept the claim that he used the parcel under the mistaken belief that it was part of his land, Stump's act in exceeding the boundaries of his purchase could only be seen as a permissive encroachment used at the sufferance of the true owner. *See Roman, supra.* This sufferance came to an end when Flannery filed the instant action in declaratory judgment in 1996.[2]

¶ 19 In light of the evidence of record, the trial court erred in concluding that the hostile and exclusive nature of Stump's possession could be implied where all other elements of adverse possession had been satisfied. The record discloses the existence of evidence sufficient to disprove exclusivity and hostility. *See Myers, supra,* at 62.

¶ 20 Accordingly, we find that the trial court erred in awarding the disputed par-

---

**2.** We note that the circumstances under which Stump farmed the disputed parcel post–1979 could be considered a moot point since there is no question that he did not farm the parcel for an excess of 21 years between 1979 and 1996.

cel to appellee Stump. We reverse and remand for an appropriate decree declaring Flannery to be the owner of the land.

¶ 21 Order reversed. Case remanded, Jurisdiction is relinquished.