**RECREATION LAND CORPORATION and Treasure Lake Property Owners Association, Inc., Appellees**

v.

**M. Imogene HARTZFELD and Thomas Hartzfeld, Appellants.**

Superior Court of Pennsylvania.

Argued Jan. 15, 2008.

Filed April 18, 2008.

Mitchel B. Zemel, Homestead, for appellants.

Michael P. Yeager, Clearfield, for appellees.

BEFORE: LALLY–GREEN, PANELLA, and TAMILIA, JJ.

OPINION BY LALLY–GREEN, J.:

¶ 1 Appellants, M. Imogene Hartzfeld and Thomas Hartzfeld, appeal from the order entered on April 17, 2007, directing them to remove a dog pen from a parcel of property. We affirm.

¶ 2 The trial court set forth the factual and procedural history of the case as follows:

This case concerns a Complaint for Injunctive Relief on behalf of Recreation Land Corporation (RLC) and the Treasure Lake Property Owners Association (TLPOA) for the removal of a dog pen erected by M. Imogene Hartzfeld, now joined by Thomas Hartzfeld (Hartzfeld). Hartzfeld raises a defense of Adverse Possession.

### FACTS

This action is the latest in a series of litigious actions between Defendant and Plaintiff stretching back to 1987.

[ ... ]

The dog pen sits on a strip of property (the disputed property) approximately 150 ft. wide between the lot owned by Hartzfeld (Lot No. N–11–A) and Treasure Lake, all located in Sandy Township, Clearfield County, Pennsylvania. Title to the disputed property is vested in the TLPOA and title to Lot No. N–11–A is vested in Hartzfeld.

The disputed land as well as Lot No. N–11–A were at one time both owned by John DuBois (DuBois), the original owner of the Treasure Lake Subdivision. In 1958, DuBois conveyed to the parents of Hartzfeld a deed for Lot No. N–11–A. In 1961, DuBois filed the lot block plan for the development that would eventually become Treasure Lake and recorded a document titled "Stipulations and Conditions" the following year. These stipulations and conditions were a set of

restrictions on the allowable use of the lots in the lot block plan and included the words "all persons who are owners of lots as set forth in the aforementioned Lot Block Plan, and their invitees, shall have the privilege of using the land surrounding Lake Rene [now Treasure Lake] ... including the 150' wide strip of land surrounding Lake Rene as owned ..." In 1968, DuBois amended the stipulations and conditions. Also in 1968, a document entitled "Declaration of Restrictions" was filed by DuBois' successor in interest.

The disputed property is wooded and Hartzfeld has tried to maintain a natural look for the area. It is noted that the Treasure Lake Subdivision as a whole is basically wooded. Defendant has planted some pines along one side of the strip in order to block his view of another house and planted grass in the disputed area. Hartzfeld has also engaged in the maintenance of the area by removing limbs, cutting the grass, removing dead trees, and grading the ground, clearing the brush, and cutting saplings. Additionally, in the disputed area, Hartzfeld as well as two adjacent owners have constructed permanent docks. Hartzfeld uses the ground for boat storage, camping and other recreational activities and has also constructed a dog pen of considerable size.

All attempts at possession by the Defendant satisfy the 21–year time requirement except the dog pen. Defendant has also confronted people on five different occasions about possible trespass onto the disputed property. The first and second were Mr. Mandell and Mr. Curry about the placement of their respective docks in which Hartzfeld felt that the docks were encroaching onto his property (the disputed property)—however Hartzfeld ultimately gave them permission. The third was a minor who Hartzfeld told he needed an adult with them in order to fish. The fourth involved Mr. Curry about the removal of a dead tree, to which Hartzfeld also ultimately acquiesced. The last was Mr. Nelson, a contractor that installed a water and sewage line across the disputed property. Hartzfeld initially objected to the placement of the line but ultimately acquiesced. It is Defendant's contention in the current suit that he is the rightful owner of the disputed property, and has acquired legal title through the action of Adverse Possession.

Trial Court Opinion, 3/29/2007, at 1–3.

¶ 3 On March 28, 2007, following a non-jury trial, the trial court ruled in favor of RLC and TLPOA. The court directed Appellants to remove the dog pen, and rejected Appellants' claim of adverse possession. The court reasoned that Appellants failed to prove the "actual" and "exclusive" elements of adverse possession. Appellants filed post-trial motions, which were denied on April 17, 2007. This appeal followed.[1]

¶ 4 Appellants raise two issues on appeal:

1. Did [Appellants] establish that [their] possession of the Disputed Property was "actual", as required by the law of adverse possession?

2. Did [Appellants] establish that [their] possession of the Disputed Property was "exclusive", as required by the law of adverse possession?

Appellants' Brief at iv.

¶ 5 Appellants argue that the trial court erred by ordering them to remove the dog

1. On May 10, 2007, the trial court ordered Appellants to file a concise statement of matters complained of on appeal. Appellants filed a timely concise statement. The trial court did not issue a Rule 1925 opinion. The record contains, however, an opinion filed March 29, 2007, which addresses the matters at issue on this appeal.

pen, because they owned the land in question through adverse possession.

¶ 6 When reviewing the results of a non-jury trial, we give great deference to the factual findings of the trial court. *In re Scheidmantel,* 868 A.2d 464, 478–479 (Pa.Super.2005). We must determine whether the trial court's verdict is supported by competent evidence in the record and is free from legal error. *Id.* For discretionary questions, we review for an abuse of that discretion. *Id.* For pure questions of law, our review is *de novo. Id.; see also Lilly v. Markvan,* 563 Pa. 553, 763 A.2d 370, 372 (2000) (an equity court's ruling will not be reversed absent an abuse of discretion, misapplication of the law, or a lack of support in the record for the court's factual findings).

¶ 7 This Court summarized the principles of proving adverse possession as follows:

Adverse possession is an extraordinary doctrine which permits one to achieve ownership of another's property by operation of law. Accordingly, the grant of this extraordinary privilege should be based upon clear evidence. *Edmondson v. Dolinich,* 307 Pa.Super. 335, 453 A.2d 611, 614 (Pa.Super.1982) ("It is a serious matter indeed to take away another's property. That is why the law imposes such strict requirements of proof on one who claims title by adverse possession.") One who claims title by adverse possession must prove actual, continuous, exclusive, visible, notorious, distinct and hostile possession of the land for twenty-one years. Each of these elements must exist; otherwise, the possession will not confer title.

*Flannery v. Stump,* 786 A.2d 255, 258 (Pa.Super.2001) (certain citations omitted), *appeal denied,* 569 Pa. 693, 803 A.2d 735 (Pa.2002). As noted above, the trial court found that Appellants failed to prove that they "actually" or "exclusively" possessed the land on which the dog pen sits.

¶ 8 First, Appellants argue that the court erred by misapplying the law of "actual" possession. Specifically, Appellants contend that the court mischaracterized the land at issue as "woodland," which carries a strict standard for adverse possession.

¶ 9 "In general, actual possession of land means dominion over the property." *Bride v. Robwood Lodge,* 713 A.2d 109, 112 (Pa.Super.1998). The requirements for "actual" possession of a property will necessarily vary based on the nature of the property. *See id.* Our case law has developed a rather strict standard for proving adverse possession of woodland. "A person establishes actual possession of a woodland by 'residence or cultivation of a part of the tract of land to which the woodland belongs.'" *Bride,* 713 A.2d at 112, *quoting Niles v. Fall Creek Hunting Club, Inc.,* 376 Pa.Super. 260, 545 A.2d 926, 929 (1988); *see also Niles, supra* ("substantial" enclosure of woodland may also qualify as "actual" possession under certain circumstances).

¶ 10 The issue of whether a parcel of land is "woodland" appears to be a threshold factual question for the trial court to decide in the first instance. Here, it is undisputed that the land at issue was far less extensive or forested than the land in *Bride* or *Niles. See Bride* (disputed area was 18 acres of woodland used for hunting and removing timber); *Niles* (disputed area was "113.4 acres of undeveloped timberland"). Nevertheless, the trial court did not abuse its discretion in finding that the area at issue was "woodland." The record supports the trial court's finding that disputed property has an extensively wooded character, and is unen-

closed.[2] Moreover, it is undisputed that Appellants did not cultivate, significantly enclose, or erect a residence on the parcel at issue. Thus, the trial court did not err by finding that Appellants failed to prove "actual" possession by clear and convincing evidence. Because actual possession is necessary to a finding of adverse possession, the court did not err in rejecting Appellants' adverse possession claim.

¶ 11 Even assuming *arguendo* that the court did err on the issue of "actual" possession, we would conclude that the court did not err on the issue of "exclusive" possession. In *Flannery*, this Court summarized the principles of exclusive possession as follows:

> [T]he adverse claimant must use the land exclusively for himself.... It is well settled that a party claiming title to real property by adverse possession must affirmatively prove that he or she had actual, continuous, distinct, and hostile possession of the land for twenty-one years. Each of these elements must exist, otherwise the possession will not confer title. An adverse possessor must intend to hold the land for himself, and that intention must be made manifest by his act.... He must keep his flag flying and present a hostile front to all adverse pretensions. Broadly speaking, actual possession of land is dominion over the land; it is not equivalent to occupancy. **Where the possession, at its inception, is permissive, ... [adverse possession] will not begin to run against the real owner until there has been some sub-**sequent action of disseizin or open disavowal of the true owner's title[.]

*Flannery*, 786 A.2d at 259–260 (citations omitted, emphasis added).

¶ 12 In the instant case, the record reflects that since at least 1968, the TLPOA has considered the disputed land to be common lakefront property for **everyone** in the Treasure Lake community to enjoy, **including Appellants.** Moreover, Appellants knew that the TLPOA, as titleholder to the disputed land, granted permission for Appellants to enjoy the land. Under those circumstances, it was incumbent on Appellants to first openly disavow and challenge TLPOA's title before the adverse possession period could begin to run. *Flannery*. Here, Appellants never did so. They apparently treated the disputed property as their own, and purported to allow other Treasure Lake residents to use the disputed property, but they never openly challenged and disavowed RLC/TLPOA's title to the land.[3] The trial court did not err in finding that Appellants failed to prove that their possession was exclusive. This claim fails.

¶ 13 Order affirmed.

---

2. Appellants further argue that the Treasure Lake area as a whole is now extensively developed, and that the trial court erred by concluding that "the Treasure Lake Subdivision as a whole is basically wooded." *See* Trial Court Opinion, 3/29/2007, at 2. In our view, the trial court's characterization of the subdivision as a whole is irrelevant to the issue of whether the particular disputed parcel at issue is woodland.

3. As the trial court aptly put it, "A man cannot grant to all Pennsylvanians the right of entry into the State Capitol Building and then claim that his possession is exclusive. He is granting a right that they already held." Trial Court Opinion, 3/29/07, at 4.