J. A16025/17

NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| CATHLEEN M. TESAURO AND | : | IN THE SUPERIOR COURT OF |
| JOSEPH W. TESAURO, JR., | : | PENNSYLVANIA |
| HUSBAND AND WIFE | : | |
| | : | |
| v. | : | |
| | : | |
| CYNTHIA SCHROYER AND | : | |
| ADAM T. SCHROYER, | : | No. 1655 WDA 2016 |
| | : | |
| Appellants | : | |

Appeal from the Order Entered September 26, 2016,
in the Court of Common Pleas of Fayette County
Civil Division at No. 2572 of 2014 G.D.

BEFORE:  STABILE, J., FORD ELLIOTT, P.J.E., AND STRASSBURGER, J.*

MEMORANDUM BY FORD ELLIOTT, P.J.E.:       FILED NOVEMBER 21, 2017

Cynthia Schroyer and Adam T. Schroyer appeal the September 26, 2016 order in which the Court of Common Pleas of Fayette County declared Cathleen M. Tesauro and Joseph W. Tesauro the fee simple owners of a parcel of land of 0.2033 acres acquired by adverse possession and legal and

_____

* Retired Senior Judge assigned to the Superior Court.

equitable owners of a parcel of land of 0.1618 acres.[1]  After careful review,

we affirm.

The relevant facts, as found by the trial court, are as follows:

> Before the Court is a Complaint in Action to Quiet Title filed by [appellees], involving two adjacent parcels of land in South Connellsville, Fayette County, Pennsylvania.
>
> In the Complaint, the ownership of the first parcel, identified as "Disputed Property I," is being

---

[1] Appellants' brief incorrectly indicates that appellants appeal from the October 24, 2016 order that modified the trial court's order of October 7, 2016 and denied appellants' motion for post-trial relief.  (Appellants' brief at iv.)  An appeal, however, properly lies from the entry of judgment, not from an order denying post-trial motions.  See Hart v. Arnold, 884 A.2d 316, 343 n.1 (Pa.Super. 2005) (citation omitted).  We have corrected the caption accordingly.

After judgment was entered, appellants moved for post-trial relief on October 4, 2016.  At the same time, appellant moved for leave to specify additional grounds for post-trial relief after they had the opportunity to review the trial transcript.  On October 7, 2016, the trial court denied the motion for post-trial relief and granted the motion for leave to specify additional grounds for post-trial relief and gave appellants 30 days from the receipt of the transcript to file amended post-trial motions.  On October 21, 2016, appellants moved to vacate their motion for post-trial relief because

> the denial of the original or Post Trial Relief is inappropriate in as much as, if that motion is not vacated, then an appeal must be had to the Superior Court before the [trial] Court would have a chance to receive the additional grounds for Post Trial Relief after receipt of the transcript and within 30 days thereof to file an amended Post Trial Motion.

Petition to Vacate Motion for Post Trial Relief, 10/21/16 at 1, ¶ 4.

On October 24, 2016, the trial court denied the petition to vacate "as well as the Order extending time to file petition for Reconsideration of additional reasons pending transcript."  (Order, 10/24/16 at 1.)

claimed by [appellees] by way of adverse possession beginning in or about January 1957. [Appellees] seek to be declared the legal and equitable owners of Disputed Property I and request that [appellants] be forever barred and estopped from having or claiming any right, title, or interest therein.

The ownership of the second parcel, identified as "Disputed Property II," is alleged by [appellees] to be their property through title ownership of deeds of record. [Appellees] request this Court to enter an Order compelling [appellants] to commence an action of ejectment within thirty (30) days or in the alternative declare that [appellees] are the legal and equitable owners of this parcel and that [appellants] be forever barred and estopped from having or claiming any right, title, or interest therein.

By way of Answer and Counterclaim, [appellants] deny the allegations of [appellees'] alleged ownership of the disputed properties and move this Court to eject [appellees] from the disputed lands and declare the rights to the lands as belonging to [appellants].

Following bench trial, we make the following:

FINDINGS OF FACT

1. [Appellees], Cathleen M. Tesauro and Joseph W. Tesauro, Jr., husband and wife, are the owners of property located at 1513 East Gibson Avenue, South Connellsville, Pennsylvania.

2. [Appellants] and siblings, Cynthia L. Schroyer and Adam T. Schroyer, are the record owners of the land in dispute.

4.[2] From 1957 through the present, [appellees] and their predecessors in title

---

[2] The trial court did not include a paragraph enumerated "3" in its findings of fact.

- 3 -

came into use and possession of Disputed Property I, an area containing 0.2033 acres.

5.    [Appellees] and their predecessors in title maintained Disputed Property I by cutting the grass, maintaining and trimming the trees, building and maintaining a shed, repairing and storing motor vehicles, cultivating a garden, constructing and maintain[ing] a pigpen, and utilizing the land for ingress and egress to the garden and shed.

6.    [Appellees] are the sole owners in fee simple of Disputed Property I by way of adverse possession accruing with predecessors in title since 1978.

7.    The metes and bounds description of [appellees'] 1.433 acre tract requires the first call point as "beginning at an iron pin in Gibson Avenue at a place where an alley intersects on said Avenue."

8.    The boundary line of the [appellees'] 1.433 acre tract is established by deeds of record, by the surveys of L.J. Swisher, dated September 24, 1956, Reid Pendleton, dated September 15, 1962, and Fayette Engineering, dated October 8, 2014, and by the monumentation on the ground as found by Rusty Mechling of Fayette Engineering.

9.    [Appellees] are the legal and equitable owners of Disputed Property II by deeds of record.

DISCUSSION

[Appellee] Cathleen M. Tesauro is the daughter of Lester and Nellie Greenawalt.  The Greenawalts acquired the property located at 1513 East Gibson

Avenue, South Connellsville, Fayette County, Pennsylvania, by way of Deed, dated January 9, 1957, and recorded in the Recorder of Deeds of Fayette County at Record Book 874, Page 530, from Grantors, George E. Schroyer and wife, Vivian J. Schroyer.

Lester Greenawalt died in 1986 and Nellie Greenawalt was vested as the fee owner in 1513 East Gibson Avenue. Nellie Greenawalt continued to reside there and married William Blackburn in 1989. [] Cathleen M. Tesauro moved to Gibson Avenue with her parents in 1957 at the age of five years old. She remained a resident until she married, but maintained daily visits with her parents thereafter. Nellie Greenawalt died in 2011. By Deed, dated August 15, 2012, The Estate of Nellie P. Blackburn and others conveyed 1513 East Gibson Avenue, South Connellsville, Fayette County, Pennsylvania, to [appellees], recorded at Record Book Volume 3196, Page 1197.

. . . .

[Appellees] assert that they are the fee simple owner[s] of Disputed Property I by virtue of adverse possession. Disputed Property I lies adjacent to and south of the [sic] 1531 Gibson Avenue as acquired by [appellees] by Deed, recorded at Record Book 874, Page 530. [Appellees] alleged they and their predecessors in title have been in actual, continuous, exclusive, visible, notorious, distinct, and hostile possession of the land since 1957. Here, the testimony adduced at trial establishes that [appellees] have exercised such dominion and control over Disputed Property I to be declared as the legal and equitable owners of this tract.

Cathleen M. Tesauro testified that her father, Lester Greenawalt, and also her predecessor in title, cleared the property identified as Disputed Property I by removing boulders and clearing tree limbs. The tree line has remained unchanged since Lester Greenawalt began maintenance. According to

Cathleen Tesauro, Lester Greenawalt also planted fruit trees, cut and maintained the grass, and gardened on the disputed land. Lester Greenawalt placed a shed on Disputed Property I, as depicted by Exhibit 8 in approximately 1968 which shows Cathleen in front of the shed. The shed was used to store car parts, tools, and lawn and gardening equipment.

When Lester Greenawalt died, Nellie Greenawalt and her second husband, William Blackburn, maintained Disputed Property I in a similar manner by gardening, cutting the grass, trimming the trees, and utilizing the shed. [Appellee], Joseph W. Tesauro, Jr. assisted his mother-in-law and step-father-in-law and the Greenawalt-Blackburn grandchildren also assisted Nellie and William Blackburn in maintaining the disputed property. The continued maintenance of Disputed Property I is depicted in photograph Exhibits 9, 10, and 11.

Cathleen Tesauro credibly testified that neither [appellant] nor any other Schroyer previous in title ownership has ever acted in a manner to take possession or control of Disputed Property I. No other person has ever used the shed, mowed the grass, cut the trees, or maintained a garden on this tract of land.

Joseph W. Tesauro, Jr. testified that his father-in-law, Lester Greenawalt, worked on vehicles by the shed, cut car parts up near the shed, and kept spare motors and parts in and around the shed for the several cars parked on Disputed Property I. Joseph W. Tesauro affirmed that the lands over Disputed Property I were cleared and maintained prior to his involvement with the Greenawalt family, beginning in approximately 1969. Joseph W. Tesauro also denied that anyone has ever demanded that he not use [the] land or that the shed be removed. Upon this factual basis, the period in time from January 1957 until August 15, 2012, the date

- 6 -

of the vesting Deed to the Tesauros shall be included in calculating the twenty-one[-]year requirement.

[Appellants] presented fact witnesses Jeff Schroyer, Richard E. Schroyer, Donald J. Evans, Eric Schroyer, Kevin B. Schroyer, and [appellant] Adam Schroyer. The substance of [appellants'] factual evidence focused on the relationship between Lester Greenawalt as being friends with George E. Schroyer, the patriarch of the Schroyer family and the Grantor of the vesting deed to the Greenawalts as is recorded at Record Book 874, Page 530.

The Schroyers testified that they maintained farm animals and would deliver eggs and manure to the Greenawalts. Several of the Schroyer children remembered spreading the manure on the garden in Disputed Property I, but doing so as an act beneficial to Lester Greenawalt. The Schroyer family did not maintain the garden on Disputed Property I for themselves and did not reap the benefits of the garden. Several Schroyers testified that their family maintained their own garden throughout their childhood and that garden was not located on Disputed Property I.

Jeff Schroyer placed the location of the Greenawalt garden within the pink and blue sections of Exhibit 7 -- the blue being claimed by adverse possession. Jeff Schroyer stated that the size of the garden varied but grew larger with time. Jeff Schroyer also confirmed that the shed on Disputed Property I was built for Lester Greenawalt and that Lester Greenawalt kept "fifteen to twenty" cars around the shed where he performed mechanical work on the cars. The Schroyer family members testified that Lester Greenawalt kept a pig pen. Jeff Schroyer believed part of the pig pen likewise overlapped the blue section on Exhibit 7.

On direct examination, Richard E. Schroyer alleged that his father, George Schroyer gave Lester Greenawalt permission to use the lands of Disputed Property I. On cross examination, Richard

E. Schroyer testified the permission was known as "a common thing" and could not pinpoint a time when verbal permission occurred, rather he "assumed" his father gave permission to Greenawalt. When re-directed by [appellants'] counsel, Richard E. Schroyer admitted that he never heard a property line discussion between his father, George Schroyer, and Lester Greenawalt, but that it was an "unspoken thing" between "neighbors." Richard E. Schroyer was never personally a title owner to the disputed properties and never told the Greenawalts or Tesauros not to use the land.

. . . .

[Appellant] Cynthia L. Schroyer did not testify. [Appellant] Adam Schroyer testified that he jointly owns the property with his sister, Cynthia L. Schroyer. Adam Schroyer admitted that he has never denied the use of the land in the blue area to the Tesauros, Blackburn, or Greenawalts. Adam Schroyer alleged that he did not deny the use of the land because he was told by his father that as long as Mr. and Mrs. Greenawalt lived there, they could use that ground. Adam Schroyer took no actions and uttered no words to prevent the Tesauros or predecessors in title from using Disputed Property I. Adam Schroyer admitted that the area shaded in blue, representing Disputed Property I, has been used continuously by the Greenawalts and Tesauros since 1957 as their own. Adam Schroyer denied that he or any members of his family ever took possession of Disputed Property I in any way. Adam Schroyer admitted that the Tesauros, Blackburns, and Greenawalts cut the grass for all those years, planted fruit trees, placed a shed, and maintained a garden on Disputed Property I.

Based upon the testimony and as admitted by [appellant], Adam Schroyer, there remains no question of fact that [appellees] have continuously used Disputed Property I as their own lands since 1957.

Trial court opinion, 9/26/16 at 1-9 (citations to the record omitted).

DISPUTED PROPERTY II

[Appellees] are the fee simple owners of 1513 East Gibson Avenue, South Connellsville, Fayette County, Pennsylvania as fully described and bounded in the Deed, dated August 15, 2012, from the Estate of Nellie P. Blackburn and others to [appellees] recorded at Record Book Volume 3196, Page 1197. [Appellants] claim an interest in 0.1618 acres, referred to as "Disputed Property II," which lies on the southern edge of [appellees'] lands and is depicted in a pink shaded area on Exhibit 7.

[Appellees] presented the testimony of Rusty Mechling, a civil engineer and surveyor employed by Fayette Engineering, and who was recognized by the Court as an expert in the field of civil engineering and surveying. Mechling detailed the title history of the subject tract from which he relied as follows:

1. Deed, dated August 20, 1955, recorded at Record Book 841, Page 354, from Charles E. Schroyer to George E. Schroyer and Vivian J. Schroyer, his wife, containing 6.847 acres.

2. Survey of L.J. Swisher dated September 24, 1956, identifying 1.433 acres.

3. Deed, dated January 9, 1957, recorded at Record Book 874, Page 530, from George E. Schroyer and Vivian J. Schroyer, his wife, to Lester F. Greenawalt and Nellie Greenawalt, his wife, containing 1.433 acres.

4. Survey of Reid Pendleton, dated September 15, 1962, identifying 1.43 acres.

5.     Deed, dated August 15, 2012, recorded at Record Book 3196, Page 1197, from the Estate of Nellie P. Blackburn and others to Cathleen M. Tesauro and Joseph W. Tesauro, her husband.

Mechling first relied on the Swisher survey with a call point located at the center of Gibson Avenue with the intersection of an alley. Mechling explained the parent tract of land is 6.847 acres as was vested in George E. Schroyer and Vivian J. Schroyer, his wife. Prior to subdividing the property, a survey was prepared by L. J. Swisher. The Swisher survey identified a point at the center of Gibson Avenue. Mechling credibly explained that this point is now referred to as a beginning point on the Tesauro property, since the metes and bounds description in the subsequent vesting deeds state[s] "beginning at an iron pin in Gibson Avenue at a place where an alley intersects on said Avenue." A subsequent survey by Reid Pendleton, dated September 15, 1962, confirmed the point in the middle of Gibson Avenue.

Mechling personally surveyed the tract of land, but was not able to physically observe the iron pin in Gibson Avenue as a result of the asphalt on the road. However, Mechling did identify the location of that pin with a metal detector. Mechling, on behalf of Fayette Engineering, prepared for [appellees] the Exhibits 6 and 7, which were admitted into evidence.

Mechling opined that the boundary lines by the deeds of record, by the surveys of Swisher and Pendleton, and by investigating the monumentation on the ground by personal survey, the current boundary of the Tesauro tract is as shown on Exhibits 6 and 7. Mechling bases his opinion on the original outconveyance from the Schroyers to the Greenawalts with a call point specifically in Gibson Avenue. Based upon the first call, with the metes and bounds ran from that call, Mechling was able to follow the footsteps of the original surveyors.

Mechling further opined [appellants] own no part of the Tesauro property based on the metes and bounds description. In support of this opinion, [appellees] cite that the subdivision creating their parcel was the first execute [sic] deed and should be given priority.

With respect to Disputed Property II, [appellants] presented two witnesses -- Donald Waxter, a title examiner and Terald McMillen, Jr., a Registered Professional Land Surveyor.

Donald Waxter testified that he reviewed the property records of the disputed parcel and that the location of Gibson Avenue was not able to be ascertained of record since there were no right-of-ways found in the title examination and no recorded plan for South Connellsville which would identify the disputed portion of East Gibson Avenue. Waxter agreed that the Tesauro property of 1.433 acres was the first parcel conveyed out of the Schroyers' 6.847 acre parent tract. Waxter also agreed that the same metes and bounds description is found throughout the deeds for the 1.433 acres and the description begins at an iron pin in Gibson Avenue.

Terald McMillen, Jr. of McMillen Engineering was recognized as an expert for [appellants] in the field of surveying. McMillen presented Exhibit C which depicted a survey prepared by McMillen Engineering for Nellie Blackburn (nee Greenawalt), dated February 1992. This survey had located various pins that were uncovered by McMillen as having been set in 1992. McMillen opined that Gibson Avenue has moved and that McMillen Engineering by survey has re-established the correct location for Gibson Avenue. McMillen did not have [] the benefit of the Swisher survey in his file in the preparation of the McMillen Engineering survey. McMillen based his 2015 survey on points and pins that were previously located by McMillen Engineering for the 1992 survey. McMillen opined that the correct boundary between the Tesauros and

Schroyers is identified on Exhibit B -- the McMillen survey.

Under questioning by this Court as to how McMillen believed that Gibson Avenue had moved, McMillen testified that information was at the McMillen Engineering office, but no such evidence was admitted at trial or provided to this Court.

Id. at 11-14 (citations to the record omitted).

On March 7, 2016, appellants petitioned to strike the testimony of Russell B. Mechling, III ("Mechling"), because Mechling was not a licensed land surveyor in Pennsylvania which made his testimony illegal under the Engineer, Land Surveyor and Geologist Registration Law ("Law").[3]  By order dated March 14, 2016, the trial court denied the petition.

---

[3] Section 3 of the of the Engineer, Land Surveyor and Geologist Registration Law provides in pertinent part:

Practice of engineering, land surveying or geology without licensure and registration prohibited

(a)     In order to safeguard life, health or property and to promote the general welfare, it is unlawful for any person to practice or to offer to practice engineering in this Commonwealth, unless he is licensed and registered under the laws of this Commonwealth as a professional engineer, for any person to practice or to offer to practice land surveying, unless he is licensed and registered under the laws of this Commonwealth as a professional land surveyor or for any person to practice or to offer to practice geology unless he is licensed and registered under the laws of this Commonwealth as a professional

On September 26, 2016, the trial court ruled in favor of appellees on both disputed parcels and entered judgment in their favor. With respect to Disputed Property I, the trial court awarded appellees the parcel based on adverse possession. With respect to Disputed Property II, the trial court declared appellees the legal and equitable owners of the tract and barred

geologist. Individuals licensed as professional engineers, professional land surveyors or registered landscape architects may perform geological work which is incidental to their engineering, surveying or landscape architecture without being licensed as a professional geologist.

(b) A person shall be construed to practice or offer to practice engineering, land surveying or geology who practices any branch of the profession of engineering, land surveying or geology; or who, by verbal claim, sign, advertisement, letterhead, card, or in any other way represents himself to be an engineer, land surveyor or geologist, or through the use of some other title implies that he is an engineer, land surveyor or geologist or that he is registered under this act; or who holds himself out as able to perform, or who does perform any engineering, land surveying or geological service or work or any other service designated by the practitioner or recognized as engineering, land surveying or geology.

63 P.S. § 150.

and estoped appellants from having or claiming any right, title, or interest in and to the tract.

On November 2, 2016, appellants appealed to this court. On November 4, 2016, the trial court ordered appellants to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On November 22, 2016, appellants complied with the request. On December 27, 2016, the trial court issued an opinion pursuant to Pa.R.A.P. 1925(a).

Appellants raise the following issues for this court's review:

> I. Whether the Trial Court erred in considering illegal testimony of [appellees'] surveyor when the court became aware that the surveyor was not licensed in Pennsylvania?
>
> II. Whether the Trial Court erred in excluding evidence of Witnesses, Family Members, and [appellants'] predecessor in title and letters form [sic] [appellants'] prior lawyer regarding [appellants'] prior position concerning the ownership of the property?

Appellants' brief at 2.

> Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of the trial judge in a non-jury case must be given the same weight and effect on appeal as the verdict of a jury, and the findings will not be disturbed on appeal unless predicated upon errors of law or unsupported by competent evidence in the record. Furthermore, our standard of review demands that we consider the

> evidence in a light most favorable to the verdict winner.

Baney v. Eoute, 784 A.2d 132, 135 (Pa.Super. 2001) (citation omitted).

Initially, appellants contend that Mechling should not have been permitted to testify because he was not licensed in the Commonwealth of Pennsylvania as a land surveyor or engineer. For support, appellants refer to Section 3 of the Law, 63 P.S. § 150(a), which states that it is unlawful to practice land surveying without a license in the Commonwealth.

> The decision to permit a witness to testify as an expert rests with the sound discretion of the trial court, and, absent an abuse of discretion, the decision will not be disturbed on appeal. Miller v. Brass Rail Tavern, Inc., 541 Pa. 474, 481, 664 A.2d 525, 528 (1995). To be qualified to testify in a given field, a witness normally needs only to possess more expertise than is within the ordinary range of training, knowledge, intelligence, or experience. Id. at 481, 664 A.2d at 528. Ordinarily, therefore, the test to be applied is whether the witness has a reasonable pretension to specialized knowledge on the subject matter in question. Id. at 480-81, 664 A.2d at 528; Ruzzi v. Butler Petroleum Co., 527 Pa. 1, 10, 588 A.2d 1,5 (1991).

Flanagan v. Labe, 690 A.2d 183, 185 (Pa. 1997).

Appellants challenge the qualifications of Mechling as an expert. However, at the commencement of the trial on September 25, 2015, appellants' counsel stipulated to the qualifications of Mechling. (Notes of testimony, 9/25/15 at 5.) Furthermore, the record reflects that when appellees offered Mechling as an expert in civil engineering survey, appellants had no objection. (Id. at 7.)

"Parties are bound by their stipulations made in judicial proceedings. '[C]oncessions made in stipulations are judicial admissions, and accordingly may not later in the proceedings be contradicted by the party who made them.'" Fierst v. Commonwealth Land Title Ins. Co., 535 A.2d 196, 199 (Pa.Super. 1987), quoting, Tyler v. King, 496 A.2d 16, 21 (Pa.Super. 1985).

Because of appellants' earlier stipulation, they cannot at a later time challenge Mechling's qualifications as an expert. They had the opportunity to do so at trial and chose not to avail themselves of this opportunity. The trial court did not abuse its discretion or commit an error of law when it denied appellants' motion to strike Mechling's testimony.

Appellants next contend that the trial court erred when it excluded evidence of witnesses, family members, and appellants themselves concerning permission given by the appellants' predecessor in title to use the land.

Adverse possession is a doctrine that permits one to obtain ownership of another's property by operation of law. The grant of adverse possession must be based on clear evidence. Flannery v. Stump, 786 A.2d 255 (Pa.Super. 2001). A person who claims title by adverse possession must establish that he or she had actual, continuous, exclusive, visible, notorious, distinct, and hostile possession of the land for 21 years. Recreation Land Corp. v. Hartzfeld, 947 A.2d 771 (Pa.Super. 2008). The use must be

adverse to that of the record owner of the property. If the use is permitted by a lease, license, indulgence, or other grant from the owner, it is not adverse. Flannery, 786 A.2d at 258-259.

Appellants argue that the trial court erred when it did not permit their witnesses and family members to testify that George Schroyer told them that he gave permission to appellees and their predecessors to use Disputed Property I because such statements were hearsay. Appellants assert that these statements were admissible as a present sense impression exception to hearsay.

Section 803(1) of the Pennsylvania Rules of Evidence provides:

> Present Sense Impression. A statement describing or explaining an event or condition, made while or immediately after the declarant perceived it.
>
> > Comment: This rule is identical to F.R.E. 803(1).
> >
> > For this exception to apply, declarant need not be excited or otherwise emotionally affected by the event or condition perceived. The trustworthiness of the statement arises from its timing. The requirement of contemporaneousness, or near contemporaneousness, reduces the chance of premeditated prevarication or loss of memory.

Pa.R.E. 803(1).

Appellants argue that George Schroyer, based on his impression, told his family members and other witnesses about the permission that he gave to use the land. The family members and other witnesses perceived the

event based on George Schroyer's description or, in the case of appellants, provided permission again to appellees based on what their father, George Schroyer, told them. Appellants argue that because George Schroyer told them about granting permission, this information was perceived by appellants and other family members and witnesses and should be admitted under the present-sense impression exception to the rule excluding hearsay.

This court does not agree. The exception states that the statement must have been made at the time of the event or immediately after the declarant perceived it. *Harris v. Toys "R" Us-Penn, Inc.*, 880 A.2d 1270, 1279 (Pa.Super. 2005).

In *Croyle v. Smith*, 918 A.2d 142, 150 (Pa.Super. 2007), this court held that a statement given approximately ten minutes after a motorcycle accident was not a present sense impression because the statement was not issued so close to the event that the declarant did not have the opportunity to decide to make a false statement.

Here, nothing in the record sets forth when George Schroyer allegedly made such a statement or its relation to the alleged grant of permission to the Greenawalt family. This exception to hearsay does not apply.

Appellants next contend that the trial court erred when it excluded as hearsay evidence of a prior survey which had been given to a witness by appellants' predecessors in title in violation of Pa.R.E. 803(15).

Section 803(15) of the Pennsylvania Rules of Evidence provides that the following is not excluded by the rule against hearsay:

> **Statements in Documents That Affect an Interest in Property.** A statement contained in a document, other than a will, that purports to establish or affect an interest in property if the matter stated was relevant to the document's purpose--unless later dealings with the property are inconsistent with the truth of the statement or the purport of the document.

Pa.R.E. 803(15).

Although appellants admit that the survey which was marked as Exhibit C was admitted into evidence, appellants claim that their expert witness, Terald McMillen, Jr. ("McMillen"), was not permitted to testify regarding it. This survey was prepared by McMillen's father for Nellie Greenawalt Blackburn. Appellees objected to the offering of this document. The trial court overruled the objection. (Notes of testimony, 9/25/15 at 64-65.) Reviewing McMillen's testimony, it appears that appellants' attorney questioned him about the survey labeled Exhibit C without objection. It is not exactly clear what issue appellants attempt to raise.

Appellants also assert that the exclusion of additional evidence regarding this survey harmed appellants' right to defend what they believed was their property. Apparently, appellants are referring to letters written from a deceased attorney who represented appellants' parents. The trial

court sustained appellees' objection to these letters.  It does not appear that these letters would qualify as exceptions to hearsay under Pa.R.E. 803(15).

Finally, appellants assert that the disputed land holds its reputation as Schroyer land based on earlier surveys that testimony should have been permitted as an exception to hearsay contained in Pa.R.E. 803(20) which provides:

> Reputation Concerning Boundaries or General History.  A reputation in a community--arising before the controversy--concerning boundaries of land in the community or customs that affect the land, or concerning general historical events important to that community, state or nation.

Pa.R.E. 803(20).

Here, there were already surveys which represented boundaries of the land in question that were admitted into evidence.  Also, testimony regarding the permission to use land in Disputed Property I is not reputation evidence nor does it establish boundaries.  The surveys of 1956 and 1962, referred to by appellants, are not the reputation of boundaries but represent the boundaries themselves.  This issue has no merit.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/21/2017