J-A15041-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| JACK DUNCAN AND JEFFREY DUNCAN | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CHARTIERS NATURE CONSERVANCY, INC. | : | No. 402 WDA 2022 |
| Appellant | : | |

Appeal from the Order Dated March 7, 2022
In the Court of Common Pleas of Allegheny County Civil Division at
No(s):  No. GD-18-1327

BEFORE:  MURRAY, J., McLAUGHLIN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:          **FILED: September 5, 2023**

Chartiers Nature Conservancy, Inc. (the Conservancy) appeals from the order entered in the Court of Common Pleas of Allegheny County (trial court) ordering it to file an action in ejectment against Jack Duncan and Jeffrey Duncan (the Duncans), the plaintiffs in the underlying action to quiet title by adverse possession.[1]  We affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] The Duncans maintain that this Court lacks jurisdiction because the Conservancy has appealed from a non-appealable interlocutory order. However, in **Seven Springs Farm, Inc. v. King**, 344 A.2d 641, 643 (Pa. Super. 1975), this Court concluded that an order compelling a defendant to bring an action of ejectment or be forever barred from asserting any right, lien, title or interest inconsistent is "a final order, as to those proceedings,
*(Footnote Continued Next Page)*

## I.

The Duncans "have been or are the owners of certain property located in the Borough of Crafton, Allegheny County, designated as Lot 105-H-200" (the Duncan Property). (Second Amended Complaint, at ¶ 3). On April 1, 2016, the Conservancy obtained a deed from the Artingers for Lot 105-M-202 (hereinafter the Artinger Lot) and it obtained a quit claim deed from PNC bank for Lot 105-M-198 (hereinafter the PNC Lot) on May 25, 2000. (collectively, Property). On January 2, 2020, the Duncans filed a second amended complaint to quiet title by adverse possession[2] of the Artinger Lot and the PNC Lot.

_____

from which appeal lies." ***Seven Springs Farm***, 344 A.2d at 643 n.4. Moreover, although the order does not expressly rule on the Conservancy's preliminary objections, the order was issued as the result of a hearing held on the allegations contained in them.

[2] "Adverse possession is an extraordinary doctrine that permits one to achieve ownership of another's real property by operation of law." ***Freed v. Guilday***, 287 A.3d 880, at *3 (Pa. Super. filed Oct. 20, 2022) (unpublished memorandum) (citation omitted). "The doctrine is dependent upon an individual's possession of another's property for an enumerated period of time authorized by statute." ***Id.*** (citations omitted); ***see also*** 68 P.S. §§ 81-88 (governing claims by adverse possession); and 42 Pa.C.S.. § 5530 (setting forth a 21-year limitations period in actions for the possession of real property). "Through these statutes, the General Assembly 'encourages those who diligently develop and improve the land as against those who are content to hold the bare legal title inactively. . . . Thus, in Pennsylvania, one who claims title by adverse possession must prove actual, continuous, exclusive, visible, notorious, distinct and hostile possession of the land for twenty-one years." ***Freed***, 287 A.3d 880, at *3 (citing ***Northern Forests II, Inc. v. Keta Realty Co.***, 130 A.3d 19, 35 (Pa. Super. 2015) (quoting ***Baylor v.***
*(Footnote Continued Next Page)*

The Duncans averred that "[f]or more than 40 years, since 1977 [they] have been in open, notorious, exclusive, continuous, uninterrupted adverse possession of [the Artinger and PNC Lots] and have used them exclusively in their business" "of sorting, shredding, blending and selling soil, gravel and fill materials as well as storing tools and equipment" to the exclusion of all other parties. (*Id.* at ¶¶ 9, 11). According to the second amended complaint, the Conservancy "has not entered onto the properties nor attempted to exclude or eject the [Duncans] from [the Lots]." (*Id.* at ¶ 10).

The second amended complaint averred that the Duncans "are entitled to a judgment quieting title in them, declaring them as the sole owners of the [the Property] by adverse possession" "[a]s a result of the [their] continued, uninterrupted and exclusive use of the premises to work on the sorting, blending, storing and shredding of soil and gravel into fill material and storing tools and equipment[.]" (*Id.* at ¶ 11).

The Conservancy filed unverified preliminary objections to the second amended complaint arguing that there was a factual issue about whether the Duncans are in possession of the Artinger Lot and the PNC Lot and that the Duncans' sole remedy is to file an action in ejectment. (Preliminary

*Soska*, 658 A.2d 743, 744-45 (Pa. 1995)) (one internal citation omitted; reformatted).

Objections, 1/14/20, at ¶¶ 10-14).[3] The court conducted an evidentiary hearing on the possession issue on October 13, 2021, at which time the parties admitted evidence and multiple witnesses testified. The Conservancy filed a post-hearing brief in support of the preliminary objections in which it maintained that the evidence proved that the disputed the Artinger Lot and the PNC Lot were unenclosed woodlands and the Duncans did not establish adverse possession of them. (*See* Conservancy Brief, 11/16/21, at 9-14) The Duncans filed a post-hearing brief in opposition to the preliminary objections arguing that the issue before the court at that stage of the proceedings was only whether to overrule or sustain the preliminary objections and that, not only had they sufficiently pleaded an action to quiet title by adverse possession in the complaint, but the evidence at the hearing also established

---

[3] In this case, a question of jurisdictional fact was raised in preliminary objections as to whether the Duncans could maintain a quiet title action because they were not in possession. Where preliminary objections raise issues of fact, the Rules of Civil Procedure provide that "the court shall consider evidence by depositions or otherwise." Pa.R.C.P. 1028(c)(2); *see also Devarmin v. Consol. Rail Corp.*, 931 A.2d 1, 14 (Pa. Super. 2007) ("[I]f an issue of fact is raised by preliminary objections ... the [trial] court may not reach a determination based upon its view of the controverted facts, but must resolve the dispute by receiving evidence thereon through interrogatories, depositions or an evidentiary hearing"). Our scope of review where evidence is taken in resolving preliminary objections is the same as in reviewing jury trial verdicts which is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. *See Stephan v. Waldron Elec. Heating & Cooling*, 100 A.3d 660, 664–65 (Pa. Super. 2014).

that they were in actual possession of the Artinger Lot and the PNC Lot. (*See* Duncans' Brief, 12/03/21, at 2-8).

On March 7, 2022, in resolving the preliminary objections' factual issues, the court entered an opinion and order that found the Duncans possessed the Artinger Lot and the PNC Lot because they exercised dominion over the subject property by erecting gates limiting access to the Property, and ordered the Conservancy to file an action in ejectment pursuant to Rule 1061(b)(1). (Order, 3/07/22). (Trial Court Opinion, 3/07/22, at 6).

On March 22, 2022, the Duncans filed a motion for reconsideration, arguing that the preliminary objections raised an issue of fact and were not verified pursuant to the local rule; therefore, they could not supplement or contradict the facts raised in the complaint. (*See* Duncans' Motion for Reconsideration, 3/22/22, at ¶ 14). The Duncans noted that the complaint set forth the elements necessary for an action to quiet title by adverse possession; namely, that they had actual physical possession for at least 21 years. (*Id.* at ¶¶ 10, 15). Therefore, the only appropriate action by the trial court was to overrule the preliminary objections and order the Conservancy to file an answer to the complaint. (*See id.* at ¶ 10). It also noted that because a claim of adverse possession arises at the expiration of the time within which the Conservancy could have brought an action in ejectment, *i.e.,* 21 years, the time for it to file an action in ejectment had expired. (*See id.*

at ¶ 16). The Duncans did not request that the Conservancy file an action in ejectment. (*See id.* at ¶ 21). The court did not rule on the motion.

On April 6, 2022, the Conservancy timely appealed the court's March 7, 2022 order and filed a court-ordered statement of errors complained of on appeal. *See* Pa.R.A.P. 1925.

The Conservancy raises three questions for our review challenging the trial court's decision: (1) whether the trial court "expressly ignore[d] the legal definition of 'possession' applicable to woodland properties in favor of what the lower court calls 'the common understanding' of the word possession[;]" (2) whether the trial court abused its discretion or erred as a matter of law "when it failed to apply the legal presumption that the Conservancy possessed the properties at issue upon a finding that … possession was 'less than clear' or … plaintiffs were in possession of at least a portion of both parcels[;]" and (3) whether the trial court abused its discretion in ignoring photographic evidence to conclude that the Duncans possess the property through commercial activity conducted thereon that does not exist on the photographs. (Conservancy's Brief, at 3).

On appeal, the Duncans do not challenge the trial court's ordering that the ejectment action be brought even though it did not seek such relief. Instead, they contend that the trial court's determination that they had possession was unnecessary because all that was necessary for the

Conservancy to have to bring an action in ejectment was that they plead in their complaint that they exerted dominion over the Property.

## II.

Before addressing the Conservancy's contentions, we will address the Duncans' argument that they made out possession merely by averring those facts in their complaint. Our consideration of Pennsylvania Rule of Civil Procedure 1061 is necessary. It provides, in relevant part, that a quiet title action may be brought:

(1) to compel an adverse party to commence an action of ejectment; [or]

(2) where an action of ejectment will not lie, to determine any right, lien, title or interest in the land or determine the validity or discharge of any document, obligation or deed affecting any right, lien, title or interest in land[.]

Pa.R.C.P. 1061(b)(1)-(2).

Rule 1061 unified into a "single procedure all of the diverse procedures by which clouds on title were formerly tried[,]" but "neither creates a new action nor changes the substantive rights of the parties or jurisdiction of the courts." *Siskos v. Britz*, 790 A.2d 1000, 1007 (Pa.2002) (citations omitted). A "plaintiff in an action to quiet title must be in possession of the land in controversy; if he is not in possession, his sole remedy is an action in ejectment." *Plauchak v. Boling*, 653 A.2d 671, 674 (Pa. Super. 1995) (citation omitted).

In **Siskos**, our Supreme Court addressed that when the determination is made of whether a plaintiff is in possession is a jurisdictional requirement necessary to bring quiet title action. In that case, seeking to block defendant's access to the private road, plaintiff brought a quiet title action alleging that she possessed the disputed property and, among other relief, sought to require the defendants to file an ejectment action or be barred from asserting any interest in the disputed property. The defendants answered denying that plaintiff owned the disputed land but did not assert that they had possession of the disputed property; rather, they asserted that they had title, or alternatively, adverse possession. **See Siskos**, 790 A.2d at 1003-04.

Because plaintiff's possession was not challenged, the trial court held that because the disagreement centered on ownership and not possession, it could decide the matter as part of the quiet title action even though plaintiff had asked the defendants to file for ejectment. On appeal, we affirmed but our Supreme Court "granted allocatur to consider whether [we] erred in concluding that the trial court had jurisdiction to determine who had title to the disputed property without first ascertaining who had possession of the land" and reversed. **Id**. at 1005.

In holding that it did, our Supreme Court distinguished an ejectment action from a quiet title action under Rule 1061(b)(1) and (2), as follows:

> Ejectment is an action filed by a plaintiff who does not possess the land but has the right to possess it, against a defendant who has actual possession. Pursuant to Rule 1061(b)(1), "[a] possessor of land is entitled to bring an action against one who, although not

in possession, has some claim or interest in the land, compelling that person to assert his or her interest by bringing an action of ejectment, or be forever barred from attacking the title of the possessor." A party will file a Rule 1061(b)(2) Action to Quiet Title when she is not in possession, does not have the right to possess the land, and wishes to determine all rights in the land. "The purpose of an ejectment action as opposed to quiet title is not to determine the relative and respective rights of all potential title holders, but rather the immediate rights between plaintiff and defendant involved in that particular litigation."

*Id.* at 1006 (citations omitted). It then went to hold that in an action to quiet title, "the existence of possession on the part of the plaintiff at the time of the institution of the proceeding is an essential jurisdictional fact." *Id.* at 1010. "Thus, if a plaintiff requests relief pursuant to both (b)(1) and (b)(2), a court cannot properly address the (b)(2) claim without first determining whether, under (b)(1), a Rule 1061 Action in Ejectment will lie." *Id.* at 1008.

Because possession is a jurisdictional prerequisite for such an action, where there is a dispute regarding possession in an action to quiet title in which the plaintiff requests an order to compel an adverse party to bring an action in ejectment, "the trial court cannot proceed to the merits of the action without first determining whether the plaintiff is in possession." *Id.* at 1007 (citations omitted). Whether a party has possession is dependent upon the facts of each case and, "actual possession of land" for purposes of determining whether the plaintiff is out of possession and, thus, may not maintain an action to quiet title, means "dominion over the property; it is not the equivalent of occupancy." *Moore v. Duran*, 687 A.2d 822, 827 (Pa. Super. 1996) (citation

omitted). If the plaintiff is in possession, then the defendant can be ordered to file an action in ejectment.

While that was a long way to go to answer the Duncans' contention that as long as possession is pled it satisfies the jurisdictional prerequisite for possession as set forth above, possession is required to be established after a hearing where the parties present evidence as to whether the plaintiff is in possession. Accordingly, the Duncans' contention that it made out possession just because it was pled in its complaint is without merit.

Now to the Conservancy's issues.

## III.

## A.

The Conservancy first contends that the trial court erred in finding that the Duncans had possession under the common understanding of that term rather than the more technical definition applicable to "enclosed woodlands."[4] While possession generally requires demonstration of a claimant's "dominion over the property," actual possession of woodlands requires proof that a claimant actually occupied the land or engaged in some active use of the land. "Whether property is considered a woodland is a threshold factual question

---

[4] A "woodland is an area of land that trees and bushy undergrowth cover, synonymous with a forest." *Williams v. Taylor*, 188 A.3d 447, 454 (Pa. Super. 2018). In adopting the definition, this Court relied on prior cases involving large tracts of heavily forested land. *Gruca v. Clearbrook Cmty. Servs. Ass'n, Inc.*, 286 A.3d 1273, 1279 (Pa. Super. 2022).

for the trial court to decide in the first instance." ***Recreation Land Corp. v. Hartzfeld***, 947 A.2d 771, 774 (Pa. Super. 2008) (citation omitted). The question here then is where it is alleged that the property is woodlands, is the trial court required to determine if the property is woodlands and, if so, whether the standard for determining possession is "dominion" over the property or "occupancy of the property" and the plaintiff has the requisite "possession" necessary for jurisdictional purposes to maintain a quiet title action.

We agree with the trial court that whether the property is enclosed woodlands does not go to whether the Duncans had requisite possession for jurisdictional purposes but rather goes to what is needed to make out a claim of adverse possession. Whether a person is in possession determines the form of the action and the relief that can be granted. If a plaintiff is in possession, a court could not order a defendant ejected from the property, even if the property was considered woodland; that would result in ordering the defendant to file an action in ejectment. That is why it is improper for the trial court to make any finding in the quiet title action other than whether the plaintiff is possession, a necessary finding to order defendant to file an ejectment action. ***See Roberts v. Est. of Pursley***, 700 A.2d 475, 481 (Pa. Super. Ct. 1997). Because whether the property was enclosed woodlands does not go to whether the Duncans had possession but whether they can

- 11 -

make out a claim of adverse possession, the trial court did not err in applying the ordinary definition of possession.

**B.**

The Conservancy's next two issues go to its contention that the trial court abused its discretion or erred as a matter of law in finding that possession had been made out because the legal presumption that the Conservancy possessed the Property was not overcome where the trial court found that possession was "'less than clear or … plaintiffs were in possession of at least a portion of both parcels[.]" (Trial Ct. Op., 3/07/22, at 6). The Duncans testified that they have been using the land for soil mining, have stored equipment on the Property, and have gates that control access to the Property. (***See*** R. 98-101a, R. 103-104a, R. 119-120a, R. 121-25a, R. 132a, R. 138-141a, R. 150-151a).

The Conservancy disputes each of those findings in detail, as well as making a separate argument that the trial court ignored photographic evidence that commercial activity on the Property does not exist in the photographs. At the core of the Conservancy's argument is that the court should not have relied on the Duncans' evidence and that we should reweigh the evidence in their favor. What that ignores is that it is within the trial court's exclusive purview to accept or reject any evidence. ***See Voracek v. Crown Castle USA, Inc.,*** 907 A.2d 1105, 1108 (Pa. Super. 2006). It also ignores that we cannot reweigh the evidence on appeal. ***See Stephan***, 100

- 12 -

A.3d at 664-65. Of course, when the merits of the Duncans' adverse possession claim are heard, the trial court is free to make new findings based on a full hearing that takes place after pleadings are closed and then apply the applicable adverse possession standard.

Accordingly, because the trial court found the Duncans established by competent evidence possession for jurisdictional purposes to maintain a cause of action, its order is affirmed.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/5/2023