J-A15022-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| DAVID STUMPO | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| EDWARD CAMP, JR., AND ANDREA J. | : | No. 1482 WDA 2022 |
| CAMP HUSBAND AND WIFE, AND | : | |
| DENNIS A. MARTIN, JR., AND SUSAN | : | |
| R. MARTIN HUSBAND AND WIFE. | : | |

Appeal from the Judgment Entered February 9, 2023
In the Court of Common Pleas of Fayette County Civil Division at No(s):
No 78 of 2021 GD

BEFORE:   MURRAY, J., McLAUGHLIN, J., and Colins, J.[*]

MEMORANDUM BY McLAUGHLIN, J.:          **FILED: September 29, 2023**

David Stumpo appeals from the order entering judgment in favor of Edward Camp, Jr. and Andrea J. Camp, husband and wife (collectively, "the Camps"). We affirm.

This matter arises from a dispute over ownership of adjacent land, namely a driveway, between property owners in Fayette County. Stumpo brought an action against the Camps[1] claiming ownership of the property in question and asserted four causes of action: quiet title, declaratory judgment,

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Stumpo also named Dennis A. Martin, Jr. and Susan R. Martin (collectively, "the Martins") as defendants in the same action, but Stumpo settled with the Martins prior to trial.

ejectment, and trespass. The Camps filed an answer, new matter, and counterclaim for ejectment. A non-jury trial was held on October 31, 2022.

The court accurately set forth the relevant facts adduced at trial as follows:

Stumpo testified that he lives at 453 Jefferson Street, Mount Braddock and that he instituted this action because Defendant Camps "got their property surveyed and ... [they are] taking my property." N.T., 10/31/2022, at 4-5. Stumpo bought his property on May 7, 1986, with his brother, and then on February 26, 2019, he received his brother's interest. *See*, Exhibits 1 and 2. Stumpo has lived there continuously since 1986. N.T., 10/31/2022, at 6. When he purchased the property, the prior owner walked the property line with him and showed where the pegs and markers were located. *Id.* Stumpo testified than one peg remains on the corner of his property next to a big oak tree in the front of his house. *Id.* Stumpo installed a driveway and electric power to the property. *Id.* at 7.

Stumpo admitted into evidence a drawing by West Penn Power Co. dated October 23, 1985, for the purpose of showing there was a drawing of a driveway on his property in 1985. *Id.* at 10; *see*, Exhibit 3. He testified that when he installed the driveway that he believed the driveway to be on his property based upon the survey markers at the time. *Id.* at 11.

***

Stumpo admitted a survey prepared by Fayette Engineering Company dated February 20, 2020. *See*, Exhibit 6. Stumpo testified that the survey depicts his house as "Mobile Home" at the top of the survey and a "T-post Fd. 42.[6]' on line" notation depicts the location of the post he referred to earlier. *Id.* at 20-21. Stumpo testified that he has continuously used his driveway since he moved in and denied that anybody else used it other than his family and West Penn Power. *Id.* at 21. Upon only his testimony, Stumpo rested.

Under cross-examination, Stumpo admitted the Fayette Engineering Survey depicts his shed mostly on the Camps' property. *Id.* at 23. Stumpo admitted that he did not have a survey conducted. *Id.* at 23-24. Stumpo denied that the Camps

- 2 -

or their predecessors ever used his "private driveway." *Id.* at []24. Stumpo further admitted that what he claims to be his private driveway is depicted on the survey instead lying on the Camps' property. *Id.* at [25]. Stumpo testified that the Camps had a second survey performed recently by Polestar but he did not review it. *Id.* . . . Stumpo handwrote a letter to the Camps which stated in its entirety [verbatim]:

> Mr Mrs Camp
>
> I will buy your corner property, from a garden to my shed. I bought my property from Lancaster in 1985. He and I walked the line. For what I thought was my property line for 35 years. He was wrong x were property line was. I paid $ 500.00 acre. Everyone Homesteaded up here more less back in day.
>
> Hope we can come to a agreement
>
> David Stumpo

*See*, Exhibit A.

Stumpo testified that he disagrees with the surveys because he knows where his boundary line and peg was located, and he knows what his predecessor told him about the property boundary. [N.T.] at 28. Stumpo further testified that the Camps only began parking behind their house and using the driveway over the last two years since receiving the survey. *Id.* at 29. Stumpo is claiming that the entirety of the driveway and the fence to the left of the driveway are all on his property. *Id.* at 30.

Andrea Camp testified that Fayette Engineering prepared a survey for her neighbor, Mr. Martin, and that she received a copy. *Id.* at 33. Based on the survey, the Camps erected a fence on either side of the driveway, leaving the driveway open and passable. *Id.* at 33-34. Andrea Camp testified that they have used the driveway for as long as they have lived there to access her house, that she has always driven into the back of her home to park. *Id.* at 34. . . . Andrea Camp testified that she uses the driveway to the left to park behind her house — being the driveway that Stumpo claims is his private driveway. *Id.* at 34-35. Andrea Camp testified that she has been using that roadway since 2012. *Id.* at 36. The Camps purchased the property from Edward Camp Jr.'s uncle, Gary Martin. *Id.* Andrea Camp testified that when they visited

family prior to purchasing the property that they used the same disputed driveway for access. *Id.* at 36-37. Andrea Camp testified that they have never blocked Stumpo's use of the driveway. *Id.* at 37.

Andrea Camp further testified that they had a second survey performed by Polestar Engineering and that both the Fayette Engineering and Polestar Engineering surveys depict the disputed driveway as being on the Camps' property. *Id.* at 37-38. Andrea Camp testified that they are not seeking to exclude Stumpo from using the driveway or requiring him to move the shed or garden off their property, rather they want to be declared the owners of the land and be permitted to keep their fence in place. *Id.* at 38-39.

\*\*\*

Russell B. Mechling, III testified on behalf of the Camps and was recognized by the Court as an expert in the field of surveying. *Id.* at 47-50. Mechling testified that he was able to mark the driveway on the survey by reviewing deeds back through 1977 where he found the Camps' parcel being created. *Id.* at 51-52. He then went into the field to find whatever evidence he could of prior surveys and markings. *Id.* at 52. . . . Mechling testified that the disputed driveway is a long driveway coming off Jefferson Street, going past the Camp house, into Stumpo's property, and that it lies on the Camps' parcel. *Id.* at 55-57. Similarly, Mechling testified that Stumpo's shed lies primarily on the Camps' property as well. *Id.* at 57.

Mechling was questioned about the "t-post" found on his survey and explained that it was a marker along the line between the Camps and RIDEC, Inc. but "absolutely not meant to ever be conceived as a corner marker" for Stumpo's parcel. *Id.* at 58.

\*\*\*

Plaintiff's counsel inquired and Mechling agreed that the Camp deed description describes both the northern boundary and the southern boundary as 572.5 feet, but that is impossible given the fact that the property is not a rectangle. *Id.* at 62. Mechling corrected this by taking approximately fifty feet out of the southern boundary call. *Id.* at 62-63. Mechling explained that the iron rail he located he identified as a marker from a prior [] survey. *Id.* at 63. Regarding the Stumpo property, Mechling testified that

Stumpo's deed description does not close rather that his bearings go along Jefferson Street and neatly conform to the shape and curve of Jefferson Street as it traverses north showing the calls run along a prior West Penn railway. *Id.* at 66. This boundary is four straight lines that conform to the curve but do not close. *Id.* at 66-67. Mechling testified that neither the Stumpo nor the Camp deeds mathematically close. *Id.* at 67.

\*\*\*

Joseph O. Elwell, Jr. is a licensed surveyor for Polestar, a surveying and engineering company, and testified on behalf of the Camps. *Id.* at 70-71. The Court recognized Elwell as an expert in the field of surveying. *Id.* at [72]. Elwell conducted a field survey on behalf of the Camps. *See*, Exhibit E. Elwell testified that the gravel driveway traverses Stumpo's and Martin's property a short distance and then the remainder is across the Camps' land. [N.T.] at 75-76. The shed owned by Stumpo is mostly on the Camp property. *Id.* at 76. Elwell testified that the t-post Stumpo claims as a corner pin is forty-two feet down the line from the actual corner and basically marks the line, not the corner. *Id.* at 77. Elwell located the Stumpo corner pin right behind the shed. *Id.* Under cross-examination, Elwell testified that he located Mechling's pins and relied on those to render his survey. *Id.* at 78.

Trial Court Opinion, filed 1/30/23, at 2-9.

Following the trial, the court entered judgment in favor of the Camps and dismissed Stumpo's complaint and the Camps' counterclaim for ejectment.[2] Stumpo filed a post-trial motion, which was denied. This appeal followed.

---

[2] The Camps' counterclaim for ejectment requested that Stumpo remove his shed and garden located on their property. The court dismissed the Camps' counterclaim because Andrea Camp testified at trial that the Camps were no longer pursuing their counterclaim to remove Stumpo's shed and garden. *See* N.T. at 47.

- 5 -

Stumpo raises the following issues:

1. Did [Stumpo] prove adverse possession since he has exclusively, openly, and continuously possessed and improved the property since 1985?

2. Did all the property owners, abutting property owners and their predecessors in title acquiesce and consent to the property boundaries for over 35 years?

3. Do monuments have a higher priority in determining boundaries than a surveyor's opinion?

4. Is a long-time property owner's opinion as to property lines evidence when monuments are so identified?

5. Did the [c]ourt commit multiple errors of law and then misapply these errors to the facts?

Stumpo's Br. at 30 (footnote and trial court answers omitted).

Our standard of review in a non-jury trial is well established:

We must determine whether the findings of the trial court are supported by competent evidence and whether the trial judge committed error in the application of law. Additionally, findings of the trial judge in a non-jury case must be given the same weight and effect on appeal as a verdict of a jury and will not be disturbed absent error of law or abuse of discretion.

***Davis ex rel. Davis v. Gov't Employees Ins. Co.***, 775 A.2d 871, 873 (Pa.Super. 2001) (citations omitted). Our scope of review for questions of law is plenary. ***Century Indem. Co. v. OneBeacon Ins. Co.***, 173 A.3d 784, 802 (Pa.Super. 2017).

Stumpo first argues the trial court erred in denying his claim of ownership by adverse possession. He maintains that he has exclusively owned, occupied, and improved his homestead since 1985, or for 35 years. Stumpo's Br. at 34. Stumpo recognizes that his complaint "does not use the

words adverse possession, or the buzz words of open, notorious, hostile[,] etc." *Id.* at 35. However, he argues that his complaint "clearly state[s] that [he] was claiming 35 years of ownership, use and improvement of the [p]roperty and that his visible driveway existed there for that entire time." *Id.*

This claim is waived. Stumpo did not plead ownership of the disputed property by adverse possession in his complaint or raise the issue of adverse possession at trial. Rather, he raised the issue for the first time in his post-trial motion. An issue raised for the first time in a post-trial motion is waived for purposes of appeal. *See, e.g., Keffer v. Bob Nolan's Auto Serv., Inc.*, 59 A.3d 621, 630 (Pa.Super. 2012) (stating that one "may not, at the post-trial motion stage, raise a new theory which was not raised during trial") (citation omitted); *Brown v. Halpern*, 202 A.3d 687, 697 (Pa.Super. 2019) ("It is well-settled that issues raised for the first time in a post-trial motion are waived"); *Young v. S.B. Conrad, Inc.*, 216 A.3d 267, 275 (Pa.Super. 2019) ("Raising an issue for the first in a post-trial motion is insufficient to satisfy the appellate rules"); *see also* Pa.R.C.P. 227.1(b)(2) (stating a post-trial motion "shall state how the grounds were asserted in pre-trial proceedings or at trial. Grounds not specified are deemed waived unless leave is granted upon cause shown to specify additional grounds"). Because Stumpo did not properly raise this issue before the trial court, he has waived it.

Even if Stumpo had properly preserved this claim for our review, it is without merit. "Adverse possession is an extraordinary doctrine which permits one to achieve ownership of another's property by operation of law."

*Recreation Land Corp. v. Hartzfeld*, 947 A.2d 771, 774 (Pa.Super. 2008) (citation omitted). A claimant seeking to assert title by adverse possession has "the burden to show each of the following elements: actual, continuous, exclusive, visible, notorious, distinct and hostile possession of the land for twenty-one years." *Gruca v. Clearbrook Cmty. Servs. Ass'n, Inc.* 286 A.3d 1273, 1278 (Pa.Super. 2022) (citation and internal quotation marks omitted). "Each of these elements must exist; otherwise, the possession will not confer title." *Recreation Land Corp.*, 947 A.2d at 774 (citation omitted).

Here, Stumpo failed to prove his use of the driveway was exclusive. Although he testified that only he, his family, and West Penn Power used the driveway, Andrea Camp testified that she and her husband used the driveway even before they purchased the property when visiting family. *See* N.T. at 36-37. The trial court found Andrea Camp's testimony credible. *See* Trial Ct. Op. at 14. The trial court's findings, based upon the credibility of the witnesses, are binding upon this Court, and we discern no abuse of discretion. *See* *Shaffer v. O'Toole*, 964 A.2d 420, 422-23 (Pa.Super. 2009).

Stumpo next argues that the trial court erred in declining to apply the doctrine of acquiescence. He maintains that all the owners of property abutting the driveway recognized the driveway as running down his eastern property line for 35 years. Stumpo's Br. at 39. Stumpo argues that "[n]o one ever indicated, stated or otherwise declared that the property line was anything other than that delineated by the driveway" and thus the adjoining landowners acquiesced to the property line. *Id.*

This claim is waived. Again, Stumpo did not plead acquiescence in his complaint or raise the issue at trial. Instead, he raised the issue for the first time in his post-trial motion. Accordingly, this issue is waived. **See Keffer**, 59 A.3d at 630; **Brown**, 202 A.3d at 697; **Young**, 216 A.3d at 275.

Even if it were not waived, Stumpo's claim fails. "'Acquiescence,' in the context of a dispute over real property, denotes passive conduct on the part of the lawful owner consisting of failure on his part to assert his paramount rights or interests against the hostile claims of the adverse user." **Moore v. Moore**, 921 A.2d 1, 5 (Pa.Super. 2007) (internal quotation marks and citation omitted). To successfully prove a boundary line by acquiescence, "[t]wo elements are prerequisites: 1) each party must have claimed and occupied the land on his side of the line as his own; and 2) such occupation must have continued for the statutory period of twenty-one years." **Zeglin v. Gahagen**, 812 A.2d 558, 561 (Pa. 2002).

Here, in declining to find ownership of the property by acquiescence in Stumpo's favor, the trial court stated:

> [Stumpo] presented no evidence to support the driveway being a boundary by acquiescence. The only credible evidence presented to this [c]ourt regarding ownership of the disputed parcel is the testimony and exhibits of two expert surveyors who agreed the disputed driveway lies on the Camps' property. Stumpo's lay opinion that he believed the driveway to be on his own property is without any legal significance. Stumpo wholly failed to refute the Camps' expert evidence. Stumpo is not the lawful owner of the disputed portion of the driveway. Further still, the Camps have resided on the property since January 2012, and the [c]ourt heard no evidence regarding their predecessor in title's use of the disputed driveway, thus Stumpo cannot meet the requisite that

the boundary was consented to by his neighbors for a continuous period of twenty-one years.

Trial Ct. Op. at 12.

We discern no error. Stumpo had the burden to prove ownership by acquiescence. Besides his own testimony, he failed to present any evidence or testimony that the adjoining landowners – previous or current – acquiesced to the property line for a period of 21 years. Moreover, the driveway never acted as a boundary separating one piece of property from the other. Rather, both parties used the driveway to reach their respective residences. Thus, Stumpo's claim of ownership by acquiescence is without merit.

Stumpo next argues that monuments have a higher priority in determining boundaries than a survey. He alleges that the surveyors ignored the existing monuments of the driveway and an iron rail corner marker that was identified in the Camps' deed as the northwest corner of their property. Stumpo's Br. at 41. According to Stumpo, the surveyors "effectively reversed the deed description by moving the entire lot to the west because [they] found a pin on the east side of the lot" but this pin was not the marker called for in the Camps' deed. *Id.* at 44.

Where a trial court sits as fact-finder in determining the placement of a boundary line, "we will not reverse on appeal unless the court's findings are not supported by credible evidence." *Schimp v. Allaman*, 659 A.2d 1032, 1034 (Pa.Super. 1995). The trial court is the "sole assessor of credibility," and "may believe all, part or none of the evidence presented." *Id.*

Here, the court found that the Camps' surveyors had determined the proper placement of the boundary lines between the parties' properties. The trial court's decision is supported by competent evidence in the record. Both surveyors unequivocally testified that the driveway is located on the Camp's property. *See* N.T. 56-57, 76. The court, as finder of fact, found the expert testimony of these two witnesses to be more credible than Stumpo's lay opinion. *See* Trial Ct. Op. at 13. Further, Stumpo had the burden of proof as to the location of property lines. He presented no evidence other than his own testimony – such as an expert opinion or an alternative survey – to refute the Camps' experts' testimony as to the location of the boundary line. Accordingly, we conclude that the trial court committed no abuse of discretion or error of law in determining the boundary of the properties.

Stumpo's next argument is that his opinion as to the location of property lines should carry a greater weight than a surveyor when monuments are involved since he is a long-time property owner and was shown his boundary line by the grantor of his property. He contends that he "is not testifying as a surveyor expert, but as to what he claims as his and why" and that he is "allowed to testify as to what his prior owner stated were the property boundaries." Stumpo's Br. at 46-47.

This claim is without merit. Stumpo was permitted to testify fully on these issues at trial and the court did not limit Stumpo's testimony in any way. The court credited Stumpo's testimony as it found proper and we will not

disturb a trial judge's credibility determinations. **See Schimp**, 659 A.2d at 1034; **Williams v. Taylor**, 188 A.3d 447, 450 (Pa.Super. 2018).

Stumpo's final claim is that the court committed multiple errors of law and misapplied the errors to the facts. **See** Stumpo's Br. at 30, 49-57. The errors alleged in Stumpo's final claim simply restate his earlier issues and were previously addressed in this memorandum.

Judgment affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/29/2023