## Goldstein v. The Heirs and Assigns of James Cloyd

*Greenwell, Porter, Smaltz & Royal* and *Griffith, Kurtz & Smith,* for plaintiff.

GAWTHROP, P. J., March 10, 1961. — Plaintiff brought an action to quiet title to real estate. Service was made by publication under appropriate order. No answer being filed, he moved for judgment in his favor. At that time, the court raised the question whether title to the cemetery plot involved, containing bodies interred in marked graves, may be obtained by adverse possession. After argument, the matter is before us for decision. The relief sought may not properly be granted.

One James Cloyd, in 1752, became owner of certain lands in East Whiteland Township, Chester County, containing substantial acreage. During his ownership, a family burial plot was established on the premises and bodies were interred in it. In 1763, James Cloyd conveyed his lands to David Cloyd by a deed containing the following provisions: "Excepting and always reserving four perches square or sixteen perches of land in the field on the North side of the Provincial Road and contiguous thereto, with free egress and regress to and from the same for use of a graveyard or burying ground to environ or encompass the graves therein already made." Ultimately title to 14.772 acres thereof, including the burying ground, vested in plaintiff by deed dated July 1, 1960, and is now a residential development.

The cemetery plot borders what is now Swedesford Road. That part of it in which bodies have been interred, containing about four square perches, is now surrounded by a dilapidated stone wall; three headstones are visible and the enclosure is overgrown with honeysuckle, trees and poison ivy. The remaining 12 square perches of the plot appear to contain no interments. The plot as a whole is surrounded by land now improved with new residences. Plaintiff's avowed purpose is to obtain indefeasible title to the cemetery plot, apply to the court of quarter sessions under the appro-

priate act of assembly for an order allowing removal and reinterment of the bodies found buried in the plot, and, after such removal, to improve the plot. He claims ownership of the entire burying ground of 16 square perches through adverse possession by himself and his predecessors in title for more than 21 years. In the view we take of the matter the order sought may not be entered.

No title to the burial plot passed from James Cloyd to David Cloyd by the deed of 1763. The word "excepting" with which the terms of the burial plot provision commence eliminated that tract from the lands conveyed. " 'An exception is always of part of the thing granted, it is of the whole of the part excepted.' " Lauderbach-Zerby Co. v. Lewis, 283 Pa. 250, 254. The following words "and always reserving" created and erected a new right in the part reserved. " 'A reservation is the creation of a right or interest which had no prior existence as such . . .' " in the part which it affects. The grantor's intent must be disclosed by the words used: Lauderbach case, supra, 254. Thus, James Cloyd excepted and retained title to the 16 square perches and at the same time by "always reserving" it created the burial use for the "graves therein already made" in perpetuity.

Nor is such use limited to only that part in which bodies are interred and graves marked. The grantor provided that the plot was excepted and reserved to *"environ or encompass"* the graves therein already made. (Italics supplied.) "Environ" means "to surround, encircle, or encompass"; "encompass" means "to encircle, surround, contain or enclose in any way": Webster's International Dictionary, 2nd Ed. Thus James Cloyd's undoubted intention was to surround, encircle and enclose forever by and within the whole of the 16 square perches "the graves therein already made" at the date of his deed to David Cloyd. What

those who came after him did by walling in approximately one-quarter of the plot where the graves then appeared to be cannot have the effect of delimiting or reducing the area of the perpetual use he originally impressed upon the whole plot. The whole therefore remains as the "graveyard or burying ground" surrounding the bodies there interred.

Title to a burial ground may not be obtained by adverse possession so long as the dead are buried there and the graves are marked: St. Peters' Evangelical Lutheran Church v. Kleinfelter, 30 Dauph. 404, modified on other grounds and, as modified, affirmed, 96 Pa. Superior Ct. 146.

The facts of this case differ sufficiently from those in Davis v. Rumford, 43 Del. Co. 355, cited by petitioners, as to be easily distinguishable. In that case, the cemetery, of about the same size as that here in question, was established by mere use of part of a one-half acre tract and not as here by express exception and reservation of the whole plot. And although the decree quieting title had already been entered without notice of the cemetery's existence, the integrity of the cemetery was preserved by the decree entered.

Petitioner's argument based on the theory of an easement of burial rights, which might be terminated by adverse possession, has no force in the view we take of the matter.

In such an action, plaintiff must prevail on the strength of his own title: Cox's Incorporated v. Snodgrass, 372 Pa. 148. Since he has not shown title by adverse possession to any of the burial ground of 16 square perches, he is not entitled to the relief he seeks barring defendants from asserting any right, title, lien or interest in the lands inconsistent with his claim set forth in the complaint.

The order prayed for is denied.

*Opinion Sur Exceptions*

GAWTHROP, P. J., July 26, 1961.—. . . In his exceptions, plaintiff raises three questions: (1) Can title to a cemetery in which bodies are interred in marked graves be acquired by adverse possession; (2) does use for burial purposes of a part of a tract impress the whole tract with such use so that title to the part not so occupied may not be acquired by adverse possession, and (3) did title to the premises in question pass subject only to an easement of burial of members of the Cloyd family?

By the language of the exception contained in the deed of James Cloyd to David Cloyd in 1763, for the reasons stated in the previous opinion the whole, and not merely the occupied part, of the plot of 16 square perches was excepted and impressed with a use for burial purposes, the unoccupied part being expressly established "to *environ* and *encompass* the graves therein already made" in the part occupied. (Italics ours.) Thus, the whole of the plot became the cemetery, title to which, by the terms of the exception, remained in the grantor: Lauderbach-Zerby Co. v. Lewis, 283 Pa. 250, 254.

Davis v. Rumford, 43 Del. Co. 355, is strongly relied upon by plaintiff in support of his argument that the integrity of the occupied portion is still preserved although the remaining three fourths of the 16 square perches becomes his property by adverse possession. We cannot agree. That case is neither controlling nor apposite, although it recognizes the principle that an owner is bound to preserve the integrity of an existing cemetery. There the cemetery was located in a small corner of a lot containing .55 of an acre, established not by express terms of a deed but by mere use of a small part of the larger tract which also had erected upon it a former school building used as a church, and

a frame dwelling house. Furthermore, the deed unto the owner during whose tenure the cemetery use began and continued was a fee simple deed containing no trust or other terms referring to use of the land. The case is readily distinguishable on its facts and does not persuade us to any different conclusion as to the unoccupied portion of this cemetery. While use alone of a part of the land for burials may not impress such use upon the unoccupied portion, express establishment of the whole tract as a unit for such purpose does so. Necessity of preserving the integrity of the whole, on the facts of this case, makes plaintiff's position untenable. There can be no abandonment of an occupied cemetery having marked graves: Davis v. Rumford, supra, 361.

Plaintiff argues that the use of the word "reserving" in addition to "excepting" makes the use of the latter word meaningless so that title to the plot did not remain in James Cloyd, who retained only an easement of burial. We cannot agree. Whether a provision in a deed is an exception or reservation must be determined by its content and by the intention of the parties. The real intention of the parties, particularly of the grantor, is to be sought and carried out wherever possible if not contrary to a settled rule of property which specifically engrafts a particular meaning on certain language, or when not contrary to or violative of settled principles of law or statutory prohibitions. To ascertain the intention of the parties, the language of the deed should be interpreted in the light of the subject matter, the apparent object or purpose of the parties, and the conditions existing when it was made. The language of subsequent deeds, when not precisely the same, must be interpreted in the light of that in the first deed: Lacey v. Montgomery, 181 Pa. Superior Ct. 640. There is nothing ambiguous in the language of the original deed of 1763, and to us it is

clear that the parties, especially the grantor, intended to create the *whole* of the 16 square perches as a cemetery or burying ground, whether entirely occupied or not, so that it should remain a unit, and to retain title thereto in himself and his heirs. When Cloyd's deed was made, three graves existed in the larger tract he owned. Their boundaries were not established by any fixed lines. By the terms of the exception, he fixed the boundaries and the area within them, thus establishing "the whole of the part excepted" out of a "part of the thing granted": Lauderbach-Zerby case, supra. By so doing, he retained title to it.

Title to an occupied cemetery containing marked graves may not be obtained by adverse possession: St. Peter's Evangelical Lutheran Church v. Kleinfelter, 30 Dauph. 404, modified on other grounds and, as modified, affirmed: 96 Pa. Superior Ct. 146. "A decent burial is the right of everyone. It is a right springing from the necessities of the case and is recognized in all well-ordered communities": Kitchen v. Wilkinson, 26 Pa. Superior Ct. 75, 80. In Brown v. Lutheran Church, 23 Pa. 495, 500, it was said:

"Pennsylvania, with a refined and elevated sense of what is due to both the dead and the living, has forbidden, by statute, the opening of streets, lanes, alleys, or public roads through any burial ground or cemetery, and has provided a penalty for wilful injuries done to grave-yards—not only to the tombstones and fence-railings, but even to the 'shrubs and plants' which bereaved love cultivates in such places. The sentiment is sound, and has the sanction of mankind in all ages, which regards the resting-place of the dead as hallowed ground—not subject to the laws of ordinary property, nor liable to be devoted to common uses. We do but express the concurrence in this sentiment which we feel, when we hold that a church and burial ground situated as these now under consideration, and owned

by distinct religious societies as tenants in common, are not within the spirit and meaning of our statutes of partition, and that the Court were right in denying judgment quod partitio fiat to the plaintiffs."

If partition statutes do not apply to an occupied cemetery with marked graves, then, for the same reasons, the statute of limitations does not apply to establish title to them by adverse possession and plaintiff has not established such a title to this tract: St. Peter's case, supra, 413, 414; Hines v. State of Tennessee, 126 Tenn. 1, 149 S. W. 1058.

Nothing contained in McDonald v. Monongahela Cemetery Co., 226 Pa. 77, requires a different result as to that part of the tract not actually occupied by marked graves. That case merely decided that a cemetery company has the power to sell unused burial lots *provided they are sold for burial purposes,* so long as the sale does not deprive the grantees of burial privileges of any rights or *interfere with the integrity of the cemetery.* Under the terms of the exception in the deed of 1763, the integrity of this cemetery would be destroyed by eliminating that part of it which is not occupied by marked graves, because it would then no longer "environ or encompass the graves therein already made," that being the stated purpose of its creation.

Plaintiff's argument that the integrity of the cemetery will be preserved even though he is held to have obtained title to it by adverse possession runs directly counter to the facts averred in his own pleading. In paragraphs 6 and 7 thereof he avers that, contemporaneously with the filing of his complaint, he is making application to the court of quarter sessions under the Act of May 12, 1887, P. L. 96 "for leave to remove such bodies as may be found upon said premises to other appropriate burial grounds" because he is "desir-

ous of making improvements to the aforesaid premises, but is unable to do so until the outstanding record interest of the heirs and assigns of James Cloyd is extinguished and the aforesaid bodies removed." Those allegations clearly disclose his true purpose for invading "God's acre" and are hardly consistent with an avowed intent to preserve the integrity of the cemetery.

The terms of the exception did not create an easement of burial. For the reasons stated, title was retained by the original grantor under the terms of the exception in his deed. Bundy v. Myers, 372 Pa. 583, cited by plaintiff, concerns construction of a reservation and is not applicable. The principles of the Lauderbach, Lacey and St. Peter's cases, supra, are controlling.

All of plaintiff's exceptions are dismissed. The relief prayed for in the complaint is denied, and the complaint is dismissed.