J-A24025-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| LYNN TRACTMAN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES R. CONNER | : | No. 2750 EDA 2023 |

Appeal from the Judgment Entered October 18, 2023
In the Court of Common Pleas of Delaware County Civil Division at
No(s):  2009-003734,
2015-00724

| | | |
|---|---|---|
| LYNN TRACTMAN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JAMES R. CONNER | : | |
| | : | |
| Appellant | : | No. 2784 EDA 2023 |

Appeal from the Judgment Entered October 18, 2023
In the Court of Common Pleas of Delaware County Civil Division at
No(s):  2015-00724

BEFORE:  LAZARUS, P.J., KING, J., and LANE, J.

MEMORANDUM BY KING, J.:                    **FILED FEBRUARY 13, 2025**

Appellant/Cross-Appellee,  Lynn  Tractman,  and  Appellee/Cross-

Appellant, James R. Conner, cross-appeal from the judgment entered in the

Delaware County Court of Common Pleas, in this property dispute.  We affirm.

The relevant facts and procedural history of this case are as follows.

Mrs. Tractman owns a nine-acre property located at 220 Ravenscliff Road, St.

Davids, Delaware County, where her residence is located. In 1984, Mr. Conner purchased a vacant residential lot at 216 Ravenscliff Road, adjoining Mrs. Tractman's property. Mr. Conner subsequently built a house on the lot, where he still resides. Both properties are located in the Ravenscliff-Roundhill housing development, organized pursuant to the Uniformed Planned Community Act ("the Act"), 68 Pa.C.S.A. §§ 5101, *et. seq.*, and its homeowners' association ("HOA").

In dispute is a strip of land approximately 26 feet wide and 240 feet long. The strip is located on Mrs. Tractman's property, but a portion of Mr. Conner's driveway, present when he purchased his property, overlaps the disputed strip.

Since 1984, Mr. Conner has used portions of the strip to store materials during the construction of his residence. Also in 1984, Mr. Conner constructed a boulder embankment wall adjacent to his driveway. Mr. Conner engaged in landscaping his property, including planting grass seed and creating a lawn, removing debris, installing a sprinkler system, and hiring companies to plant trees and maintain the property. This maintenance and such installations included portions of the disputed strip.[1]

In 2002, Mr. Conner replaced the boulder embankment wall with a retaining wall; that same year, he added landscaping beds and grass along the retaining wall. Mr. Conner has maintained the beds and grass since their

_____

[1] Mr. Conner engaged in maintenance on the strip from 1985 through the commencement of the action in 2009.

construction. In 2004, Mr. Conner built a garage on his undisputed property, but during construction, used the disputed strip as a storage area, which created visible changes to the landscape.

On October 5, 2007, Mrs. Tractman's attorney sent a letter to Mr. Conner, which stated that her review of a land survey showed that Mr. Conner's retaining wall and plantings encroached on Mrs. Tractman's property.

On March 20, 2009, Mr. Conner filed a complaint against Mrs. Tractman, raising actions in quiet title, ejectment, and a declaratory action based upon adverse possession. Specifically, Mr. Conner claimed that he had possessed the disputed strip of land approximately 26 feet wide and 240 feet long that ran along the borders of the properties for the last 21 years. Subsequently, the parties engaged in years of extensive litigation, most of which is not relevant to the instant appeal.

On December 31, 2014, following a hearing, the court entered an order finding that Mr. Conner was in possession of two parcels of the disputed strip, which included areas abutting Mr. Conner's driveway.[2] Consequently, the court ordered Mrs. Tractman to file an action in ejectment at the same docket. In January 2015, at a separate docket, Mrs. Tractman filed a three-count complaint setting forth an action in quiet title, an action in ejectment, and an action in trespass. Thereafter, upon the motion of Mrs. Tractman, the trial court consolidated both actions, and litigation continued.

_____

[2] Attached as Exhibit A to the December 31, 2014 Order was a landscaped area legal description which described in detail both parcels.

Ultimately, the parties proceeded to a non-jury trial on November 14, 2022, and November 15, 2022. On July 26, 2023, the trial court entered findings of fact and conclusions of law. The court concluded that Mr. Conner had presented clear and convincing testimony of actual, continuous, exclusive, visible, notorious, distinct and hostile use of the Parcel 1 and Parcel 2, namely, the portions including his driveway, retaining wall, and landscaping within the disputed strip, for a period in excess of 21 years. However, the court concluded that Mr. Conner did not present sufficient evidence that he was entitled to possession of the portion of the remainder of the disputed strip including the property along Orchard Road. Therefore, the court found that Mrs. Tractman was the owner of the remaining property of the disputed strip.

On August 8, 2023, Mrs. Tractman filed a timely post-trial motion arguing that the trial court failed to rule on her claim that, under the Act, covenants and restrictions in the Community Declaration of Ravenscliff-Roundhill barred Mr. Conner from an adverse possession claim.

On August 17, 2023, Mr. Conner filed a timely post-trial motion, arguing that the court erred by failing to find that he had adversely possessed the entire strip, and in failing to sanction Mrs. Tractman after Mr. Conner presented evidence showing that she had "destroyed evidence" by spraying the lawn on the disputed strip with herbicide.

On September 19, 2023, the court amended its July 26, 2023 order to note that Mrs. Tractman had not provided the court with any authority holding that the Act prohibits a claim of adverse possession, or any indication that the

relevant Declaration prevented or prohibited such a claim. The court denied the remainder of Mrs. Tractman's motion and, additionally, denied Mr. Conner's motion.

On October 18, 2023, Mrs. Tractman filed a notice of appeal. On October 24, 2023, judgment was entered on the verdict.[3] On October 31, 2023, Mr. Conner timely filed a notice of appeal. The trial court did not order either party to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal, and neither party filed a statement. On November 27, 2023, this Court consolidated the appeals as cross-appeals *sua sponte*.

At No. 2750 EDA 2023, Mrs. Tractman raises the following issues for our review:

> 1. Did the trial court commit an error of law when it determined that the restrictive covenants in the Declaration of a community existing and organized under the Uniform Planned Community Act, 68 Pa.C.S.[A.] §§ 5101 *et seq.*, did not preclude application of the Doctrine of Adverse Possession to the property at issue as a matter of law?
>
> 2. Did the trial court commit an error of law when it held that Mr. Conner's possession of Parcels 1 and 2 of Mrs. Tractman's property was actual, continuous, exclusive, notorious, visible or hostile for the requisite twenty-one (21) year period where testimony established that Mr. Conner's

---

[3] "[A]n appeal to this Court can only lie from judgments entered subsequent to the trial court's disposition of any post-verdict motions, not from the order denying post-trial motions." ***Johnston the Florist, Inc. v. TEDCO Const. Corp.***, 657 A.2d 511, 514 (Pa.Super. 1995) (*en banc*). Thus, Mrs. Tractman's appeal relates forward to the date judgment was entered on the verdict. ***See*** Pa.R.A.P. 905(a) (stating notice of appeal filed after announcement of determination but before entry of appealable order shall be treated as filed after such entry and on date thereof).

first exclusive, visible, and notorious occupation did not occur until 2002 with the erection of a stone wall topped with landscaping, and where Mr. Conner in 2007, in response to learning that he had placed his retaining wall and two landscaped beds on Mrs. Tractman's property, recognized Mrs. Tractman's superior ownership interest and attempted to negotiate a purchase or rental or "reimbursement" agreement with Mrs. Tractman's attorney, precluding a finding of "exclusive, notorious and hostile" possession for the requisite twenty-one (21) year period?

(Appellant/Cross-Appellee's Brief at 4-5).

At No. 2784 EDA 2023, Mr. Conner raises the following issue for our review:

Did the trial court, who specifically found and determined that Mr. Conner's testimony was credible, err when it inexplicably failed to enter judgment for adverse possession to Mr. Conner for the remaining portion of the Disputed Strip, despite the trial court's own finding that Mr. Conner had used that area since 1984, creating a lawn, planting trees and generally using it as his side yard for a period well in excess of 21 years?

(Appellee/Cross-Appellant's Brief at 4).

"When reviewing a trial court's decision regarding an action to quiet title, we are limited to determining whether the findings of fact that led to the trial court's conclusions of law are supported by competent evidence. Ordinarily, an appellate court will not reverse a determination of the trial court in a quiet title action absent an error of law or capricious disregard of the evidence." *Moore v. Duran*, 687 A.2d 822, 827 (Pa.Super. 1996), *appeal denied*, 549 Pa. 703, 700 A.2d 442 (1997) (citations and internal quotation marks omitted).

Additionally, "we note that the factual findings of a trial court sitting

- 6 -

without a jury carry the same weight as a jury verdict, and we will not disturb those findings on appeal absent an error of law or abuse of discretion." *Brennan v. Manchester Crossings, Inc.*, 708 A.2d 815, 817 (Pa.Super. 1998), *appeal denied*, 556 Pa. 683, 727 A.2d 1115 (1998) (citations and internal quotation marks omitted). "If a decision is based on 'findings which are without factual support in the record,' however, the reviewing court will not hesitate to reverse." *Lilly v. Markvan*, 563 Pa. 553, 557, 763 A.2d 370, 372 (2000) (quoting *Bortz v. Noon*, 556 Pa. 489, 497, 729 A.2d 555, 559 (1999)).

We first address Mrs. Tractman's issues. Initially, Mrs. Tractman argues that adverse possession of her property is prohibited by the Ravenscliff-Roundhill HOA Declaration and the Act. Specifically, Mrs. Tractman contends that the wording of the Declaration is a restrictive covenant which prohibits any change of the boundaries of a property except pursuant to the provisions of the Declaration and the Act. Mrs. Tractman interprets the Declaration as prohibiting unilateral changes in lot lines by **any** method. On this basis, Mrs. Tractman concludes that the trial court erred in finding that Mr. Conner adversely possessed the disputed strip of property. We disagree.

The Act governs planned communities, which are defined as

> [r]eal estate with respect to which a person, by virtue of ownership of an interest in any portion of the real estate, is or may become obligated by covenant, easement or agreement imposed on the owner's interest to pay any amount for real property taxes, insurance, maintenance, repair, improvement,

> management, administration or regulation of any part of the real estate other than the portion or interest owned solely by the person.
>
> 68 Pa.C.S.[A.] § 5103. In simpler terms, a planned community is an area of land consisting of homes that are individually owned as well as common areas that are owned or leased by an association consisting of all of the homeowners in the community. *See id.* §§ 5103, 5205, 5301; Uniform Planned Community Act, prefatory note, 7B U.L.A. (1980).

*Saw Creek Community Association, Inc. v. County of Pike*, 581 Pa. 436, 442, 866 A.2d 260, 263 (2005) (footnotes and some citations omitted). The Act defines a "declaration" as "[a]ny instrument, however denominated, that creates a planned community and any amendment to that instrument." 68 Pa.C.S.A. § 5103.

Black's Law Dictionary defines a restrictive covenant as:

> A private agreement, usu. in a deed or lease, that restricts the use or occupancy of real property, esp. by specifying lot sizes, building lines, architectural styles, and the uses to which the property may be put.

COVENANT, Black's Law Dictionary (12th ed. 2024).

Additionally, "restrictive covenants on the use of land interfere with an owner's free use and enjoyment of real property and, therefore, are not favored by the law." *Vernon Twp. Volunteer Fire Dep't, Inc. v. Connor*, 579 Pa. 364, 374, 855 A.2d 873, 879 (2004). Regardless, restrictive covenants are legally enforceable. *See id.* Such covenants "are to be strictly construed against persons seeking to enforce them and in favor of the free and unrestricted use of property." *Pocono Summit Realty, LLC v. Ahmad*

***Amer, LLC***, 52 A.3d 261, 269 (Pa.Super. 2012). "[N]othing short of a 'plain disregard' of the restrictive covenant's express terms can create violation of the covenant." ***Id.***

Instantly, neither party disputes that the properties are located in a planned community, created by a Declaration and ultimately governed by the Act. In support of her arguments, Mrs. Tractman directs our attention to Section 5129 of the Act, which provides that the declaration, "including the plats and plans," may be amended only by vote or agreement of unit owners under certain circumstances which are not applicable here. 68 Pa.C.S.A. § 5219(a)(1)(i)-(iii). Further, she cites Section 15 of the HOA Declaration itself, which provides:

> . . . [N]o structure (including by way of illustration and not of limitation, any dwelling, garage, swimming pool, wall or fence, accessory building or other structure) shall be erected or remodeled or altered or added to and no trees in excess of twelve inches (12") in diameter six feet (6') above the ground and no masses of smaller trees or shrubbery shall be removed and no grades shall be materially altered on any Home Lot by any person or entity except in accordance with the structure and/or landscape plans which have been submitted to and approved by the Council, which approval may be withheld or conditioned in the absolute discretion of the Council and shall relate, without limitation, to the following: general and specific architectural style and details, siting of the structure, including its relations to the other structures, setbacks and garage locations, …

(***See*** Tractman Complaint, 1/26/15, at Ex. G, Ravenscliff-Roundhill Homeowners' Association Declaration, as amended December 26, 2001, recorded in the County of Delaware, Commonwealth of Pennsylvania). Section

24 of the Declaration also provides:

> ... [T]he Declaration and the Plan may be amended from time to time only by resolution adopted at any meeting of Home Lot Owners, by affirmative vote of the holders of sixty-seven (67%) of the Proportionate Interests, provided that no such amendment shall (i) alter the proportionate Interest of any Home Lot Owner, unless the Home Lot Owner shall join in the amendment; (ii) make any material change in The Plan in respect of Home Lots; [(iii)] be materially inconsistent with the zoning, subdivision or other applicable ordinances or approvals by the Townships or other appropriate governmental authorities …

***See id.***

According to Mrs. Tractman, parties to a community declaration lose certain rights that they would otherwise possess as owners of the property, specifically, in this case, the assertion of adverse possession rights against other properties in the community. Nevertheless, Mrs. Tractman asserts that members of the community retain the right to enforce restrictive covenants, and characterizes the language in the Declaration—*i.e.*, that home lot owners may not make any material change in the plan with respect to home lots without an appropriate vote—as such a covenant.

Instantly, the trial court rejected Mrs. Tractman's assertions, explaining:

> [Mrs. Tractman did not provide citations to] any case in the Commonwealth of Pennsylvania that has held that the Uniform Planned Community Act prohibits a claim of adverse possession, and because the Declaration cited makes no mention of adverse possession, nor prohibits any Owner from raising it, this court was constrained from granting [Mrs. Tractman] relief under this theory.

(Order, 9/19/23, at n.1).

We agree with the trial court's reasoning. The excerpts cited from the Declaration neither reference adverse possession, nor prohibit it. Although Mrs. Tractman points to the language in Section 24, prohibiting "any material change in The Plan in respect of Home Lots" without a vote, this language is used in the broader context of a prohibition against **an amendment of the Plan** changing the lot lines. It does not prohibit claims of adverse possession. Mrs. Tractman cites to several cases, none of which are persuasive, because they concern restrictive covenants regarding the **use** of land and whether the covenants are carried by the land, or the enforcement of easements, neither of which are at issue here. *See, e.g., Kajowski v.Null*, 405 Pa. 589, 599-600, 177 A.2d 101, 106 (1962); *Southall v. Humbert*, 685 A.2d 574, 578-79 (Pa.Super. 1996).[4] In sum, Mrs. Tractman has not provided appropriate authority to support her theory that the Declaration of the Ravenscliff-Roundhill HOA, or anything in the Act, prohibits a claim of adverse possession of the property in question. Thus, Mrs. Tractman's first issue on appeal merits no relief.

In Mrs. Tractman's second issue, she contends that the court erred by holding that Mr. Conner's possession of Parcels 1 and 2 of her property

---

[4] Mrs. Tractman also cites to several Court of Common Pleas cases. *See Goldstein v. Heirs & Assigns of Cloyd*, 26 Pa. D. & C.2d 235 (Pa.Com.Pl. 1962) and *Waid v. Blooming Valley Cemetery Ass'n*, 1908 WL 2836, at *1 (Pa.Com.Pl. 1908). Nevertheless, these decisions are not binding precedent. *Darrow v. PPL Electric Utilities Corp.*, 266 A.3d 1105, 1112 n.6 (Pa.Super. 2021) (explaining that decisions of Court of Common Pleas are not binding precedent).

satisfied the requirements for a claim of adverse possession. Mrs. Tractman

argues that Mr. Conner could not establish the intent to possess the land if he

believed that the property was owned by the HOA. Further, Mrs. Tractman

suggests that Mr. Conner's 2007 letter offering to lease, buy, or reimburse her

for the land defeated the "hostile" element of an adverse possession claim.

Mrs. Tractman also asserts that Mr. Conner was not aware that he did not own

the land at issue until 2003, which she concludes is fatal to his claim that he

has adversely possessed any portion of her land for 21 years. Mrs. Tractman

concludes that this Court must grant her relief for these reasons. We disagree.

To succeed on a claim of title by adverse possession, one must prove:

> actual, continuous, exclusive, visible, notorious, distinct and
> hostile possession of the land for twenty-one years. Each
> of these elements must exist; otherwise, the possession will
> not confer title.

> A sporadic use of land, by one without title to it, will
> not operate to give him a title, no matter how often
> repeated[.] It is true that residence is not necessary
> to make an adverse possession within the statute of
> limitation; the possession may be adverse by
> enclosing and cultivating the land; but nothing short
> of an actual possession, permanently continued, will
> take away from the owner the possession which the
> law attaches to the legal title; temporary acts on the
> land, without an intention to seat and occupy it for
> residence and cultivation or other permanent use
> consistent with the nature of the property, are not the
> actual possession required[.] Such occupation must
> be exclusive, and of such a character as compels the
> real owner to take notice of the possession of the
> disseisor[.]

**Parks v. Pennsylvania R. Co.**, 301 Pa. 475, [481-82,] 152
A. 682, 684 (1934) (internal citations omitted). In other

words, only acts signifying permanent occupation of the land and done continuously for a twenty-one year period will confer adverse possession. The burden of proving adverse possession rests upon the claimant by credible, clear and definitive proof.

***Johnson v. Tele-Media Co. of McKean Cnty.***, 90 A.3d 736, 740-41 (Pa.Super. 2014) (some internal citations and quotation marks omitted).

With regard to the "hostile" element, it

does not denote ill will, but rather, the intent to hold the property against the record title holder. ***See Vlachos v. Witherow****, 383 Pa. 174, 176, 118 A.2d 174, 177 (1955); **accord** William Sternberg, *The Element of Hostility in Adverse Possession,* 6 Temple L.Q. 207, 208 (1932) (stating that "a person is in hostile possession when he acts with reference to the land in the same way that the owner would act"). Moreover, "acquiescence" in the context of disputed boundaries "denotes passive conduct on the part of the lawful owner consisting of failure on his part to assert his paramount rights or interests against the hostile claims of the adverse user." Edward G. Mascolo, *A Primer On Adverse Possession*, 66 Conn. B.J. 303, 312-13 (Aug. 1992); **see also id.** at 313 (noting that, "in the case of acquiescence, the use or occupancy of the premises is hostile to and against the interests of the title owner"); **accord Cremer v. Cremer Rodeo Land and Livestock Co.,** 192 Mont. 208, 627 P.2d 1199, 1201 (1981) (distinguishing acquiescence from permission).

***Zeglin v. Gahagen***, 571 Pa. 321, 328 n.5, 812 A.2d 558, 562 n.5 (2002).

Hostility may be implied "where all of the remaining elements of adverse possession have been established and where there is no evidence tending to prove or disprove hostility." ***Flannery v. Stump***, 786 A.2d 255, 258 (Pa.Super. 2001). Further, a mistake does not "in and of itself negate application of adverse possession in Pennsylvania." ***See id.*** at n.6. ***See also Schlagel v. Lombardi***, 486 A.2d 491, 494 (Pa.Super. 1984) (holding that it

was error for trial court to deny adverse possession claim on basis that mistaken belief in ownership negated existence of necessary hostile intent).

Further, although an offer to purchase the land may break the continuity of the hostility element, such an offer does **not** apply where the period of 21 years has already passed. **See Shaffer v. O'Toole**, 964 A.2d 420, 423-24 (Pa.Super. 2009), *appeal denied*, 602 Pa. 679, 981 A.2d 220 (2009). **See also Myers v. Beam**, 551 Pa. 670, 673, 713 A.2d 61, 62 (1998); **Pistner Brothers, Inc. v. Agheli**, 518 A.2d 838, 841 (Pa.Super. 1986).

Instantly, the trial court concluded that Mr. Conner presented sufficient evidence to establish his occupation and use of the disputed strip that included "a portion of his driveway, a boulder wall and later a retaining wall, and the landscaping beds that abut them, has been actual, continuous, exclusive, visible, notorious, distinct and hostile during the entire time" he has owned the property. (**See** Order, 7/26/23, at 6). Specifically, the court concluded that Mr. Conner had presented clear and convincing testimony of actual, continuous, exclusive, visible, notorious, distinct and hostile use of the Parcel 1 and Parcel 2 within the Disputed Strip for a period in excess of 21 years. (**See id.**) However, the court did not find that Mr. Conner had presented sufficient evidence to establish entitlement to the remainder of the disputed strip.

In support of its finding that Mr. Conner adversely possessed Parcel 1 and Parcel 2, the trial court noted the following facts: 1) Mr. Conner's driveway, present from the purchase of the property in 1984, is located on

the disputed strip; 2) 1984 construction of a boulder embankment wall adjacent to the driveway; 3) since 1984, Mr. Conner planted grass to create a lawn, removed debris, installed sprinkler systems, removed leaves, and hired third-party companies to plant trees and maintain the property; 4) Mr. Conner maintained portions of the disputed strip from 1985 until the commencement of the action; 5) 2002 replacement of boulder wall with a retaining wall; 6) 2002 landscaping beds added around the retaining wall; 6) Mr. Conner's continual maintenance of the beds and grass along the wall; 7) 2004 use of the disputed property as storage, which changed the landscape of the property; and 8) 2007 acknowledgment by Mrs. Tractman's attorney that Mr. Conner was using the disputed strip.

The record supports the trial court's conclusion. Although Mrs. Tractman suggests that Mr. Conner's 2007 offer to buy the disputed strip defeats the hostility element of adverse possession, this Court has rejected such an argument where, as is the case here, the offer to purchase was made beyond the 21-year period.[5] *See Shaffer, supra* at 423-24. Additionally, notwithstanding Mrs. Tractman's claims that Mr. Conner was not aware of which property he owned and did not own throughout the entire period, in Pennsylvania, the "nature of the possession alone is what is important." *Schlagel, supra* at 494 (quoting *Lyons v. Andrews*, 313 A.3d 313, 316-17 (Pa.Super. 1973)). On this record, we cannot say that the trial court erred or

_____

[5] 1984 through 2007 is 23 years.

abused its discretion in finding that Mr. Conner had adversely possessed Parcels 1 and 2 of the disputed strip. ***See Brennan, supra***. ***See also Johnson, supra***. Thus, Mrs. Tractman's second issue on appeal merits no relief.

Finally, we turn to Mr. Conner's sole issue in the cross-appeal. Mr. Conner argues that he established adverse possession of the entire disputed strip for more than 21 years. Mr. Conner claims that this Court has repeatedly held that creating and maintaining a lawn is, alone, sufficient to establish adverse possession. Because he has maintained a lawn on the entire disputed strip, Mr. Conner suggests that the rejection of his claim for the entire disputed strip was in error. Mr. Conner further avers that the December 2014 order did not find Mrs. Tractman in possession of anything, and that the decision was solely to determine who was in possession at the time of the institution of the action. We disagree that relief is due.

Preliminarily, Mrs. Tractman contends that Mr. Conner failed to appeal the factual determination made in the December 31, 2014 order, namely, that Mr. Conner possessed only two parcels of the disputed strip. Thus, Mrs. Tractman claims that Mr. Conner has waived any challenge to that determination.

An action to quiet title may be brought to compel an adverse party to commence an action of ejectment, or where an action in ejectment will not lie, to determine any other right in connection with the land. ***See*** Pa.R.C.P. 1061(b)(1)-(2). Rule 1061 unified into a "single procedure all of the diverse

procedures by which clouds on title were formerly tried[,]" but "neither creates a new action nor changes the substantive rights of the parties or jurisdiction of the courts." **Siskos v. Britz**, 567 Pa. 689, 700, 790 A.2d 1000, 1007 (2002) (citations omitted). A "plaintiff in an action to quiet title must be in possession of the land in controversy; if he is not in possession, his sole remedy is an action in ejectment." **Plauchak v. Boling**, 653 A.2d 671, 674 (Pa.Super. 1995) (citation omitted). **See also Siskos, supra** at 1006-10 (holding that existence of possession on part of plaintiff at time of institution of proceeding is essential jurisdictional fact and if plaintiff requests relief pursuant to both (b)(1) and (b)(2), court cannot address (b)(2) claim without first determining whether, under (b)(1), action in ejectment will lie).

Further, an order determining possession and ordering the appellant to file an action of ejectment or quiet title is an immediately appealable final order. **See Seven Springs Farm, Inc. v. King**, 344 A.2d 641, 643 n.4 (Pa.Super. 1975). **See also Duncan v. Chartiers Nature Conservancy, Inc.**, 402 WDA 2022 (Pa.Super. filed September 5, 2023) (unpublished memorandum),[6] *appeal granted on other grounds*, ___ Pa. ___, 309 A.3d 1011 (2024) (holding court has jurisdiction to hear appeal from order compelling defendant to bring action of ejectment or be forever barred from asserting right, lien, title or interest inconsistent, as it is final order, as to those proceedings, from which appeal lies). Further, as noted **supra**,

_____

[6] **See** Pa.R.A.P. 126(b) (stating we may rely on unpublished decisions of this Court filed after May 1, 2019 for persuasive value).

"[a]ctual possession is necessary to a finding of adverse possession[.]" ***Recreation Land Corp. v. Hartzfeld***, 947 A.2d 771, 775 (Pa.Super. 2008).

Here, in the 2014 order at issue, the Honorable George A. Pagano held that Mr. Conner was in possession of two parcels of the disputed strip at the time of the filing of the complaint, which included areas abutting Mr. Conner's driveway and Orchard Road, but not the entirety of the disputed strip. At the trial, the court heard argument concerning the effect of the 2014 order. After hearing argument, the trial court stated:

> [T]he order of Judge Pagano speaks for itself. This [c]ourt is not going to interfere with that order. This [c]ourt will interpret to the best of our ability as to what the order represents and certainly understand the argument of Counsel as it relates to that particular issue.

(***See*** N.T. Trial, 11/14/22, at 8). In its findings of fact and conclusions of law following the bench trial, the trial court stated, in relevant part:

**FINDINGS OF FACT**

\* \* \*

32. The testimony of [Mr.] Conner established his actual, continuous, exclusive, visible, notorious, distinct, and hostile use of the Parcel 1 and Parcel 2 during his ownership.

33. This [c]ourt found the testimony of [Mr.] Conner to be credible.

**CONCLUSIONS OF LAW**

\* \* \*

11. On December 31, 2014 Judge Pagano found that [Mr.] Conner had possession of a portion of the land in dispute, namely, the driveway and landscaped area. ***See*** Order

- 18 -

dated 12/31/2014.

12. [Mr.] Conner's occupation and use of the portion of the Disputed Strip that includes a portion of his driveway, a boulder wall and later a retaining wall, and the landscaping beds that abut them, has been actual, continuous, exclusive, visible, notorious, distinct and hostile during the entire time he has owned the Conner Property.

13. [Mr.] Conner testified that he began using the land and that no one gave him permission to do so.

14. [Mr.] Conner presented clear and convincing testimony of actual, continuous, exclusive, visible, notorious, distinct and hostile use of the Parcel 1 and Parcel 2 within the Disputed Strip for a period in excess of twenty-one (21) years.

15. The court does not find that [Mr.] Conner presented sufficient evidence to establish that he is entitled to possession of the portion of the remainder of the Disputed Strip that includes the property along Orchard Road (hereinafter "remaining property.")

16. Under the facts of this case, this court finds that [Mr.] Conner is entitled to full and complete ownership of Parcels 1 and 2 of the Disputed Strip that includes a portion of his driveway, a boulder wall and later a retaining wall, and the landscaping beds that abut them, i.e., the driveway area encroachment.

(Decision and Order, 7/25/23, at 5-6).

Here, the 2014 order determined that Mr. Conner was **in possession** of Parcel 1 and Parcel 2, but not the remaining portion of the disputed strip. Neither party appealed that order, resulting in the waiver of any challenges to the findings in that order. **See Seven Springs, supra**; **Duncan, supra**. Because actual possession is **necessary** prior to a finding of adverse possession, and because the trial court found 1) Mr. Conner was in actual

- 19 -

possession of Parcel 1 and 2, and 2) was **not** in possession of the remaining portions of the disputed strip, the court did not err in finding in favor of Mrs. Tractman regarding the remainder of the disputed strip. ***See Recreation Land Corp., supra***. Thus, Mr. Conner's issue on appeal merits no relief. Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/13/2025